## ROYAL C. MOORE v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY.[1]

April 30, 1915.

Nos. 19,132—(83).

**Ejectment — evidence.**
    Evidence considered and *held* to support a finding of the trial court that a

[1] Reported in 152 N. W. 405.

part of a certain lot in an addition to the village of Excelsior was west of a
railroad right of way and that plaintiff was the owner thereof.

Action of ejectment in the district court for Hennepin county
and to recover $1,000 damages. The case was tried before Steele,
J., who made findings and ordered judgment in favor of plaintiff.
From the judgment entered pursuant to the order for judgment, de-
fendant appealed. Affirmed.

*N. M. Thygeson* and *W. Yale Smiley,* for appellant.
*Lewis E. Stetler,* for respondent.

BUNN, J.

This is an action in ejectment to recover "all that part of lot
forty-one (41) in Galpin's addition to the village of Excelsior, lying
west of the right of way of the Minneapolis and St. Louis Railroad
Company." Plaintiff claims that there is a part of lot 41 lying
west of the right of way, and that he owns it. Defendant claims
that no part of lot 41 is west of the right of way, and that any land
west thereof is a part of lots 1 and 15, which are owned by the
defendant. The issues were tried to the court without a jury, and
findings made that plaintiff was the owner of the land in contro-
versy, and that defendant wrongfully entered thereon, and with-
holds the possession thereof from plaintiff. The court ordered
judgment for plaintiff, which was entered. Defendant appealed
therefrom to this court.

In 1859 Charles Galpin filed a plat of Galpin's Addition to Ex-
celsior. Lot 41, as shown by this plat, is an irregular tract contain-
ing 10.53 acres, bounded on the north by the shore of Lake Minne-
tonka, on the south by Second street, on the east by "Phinney's ad-
dition," and on the west by what appears to have been a narrow
slough or arm of the lake that extended southerly therefrom into the
land platted. In 1861 Galpin and wife conveyed to J. G. Freeman
"all the piece or parcel of land situate in Hennepin County, Minne-
sota, described as follows: Being lot No. forty-one (41), compris-
ing all the land on the north of Second street between the cemetery
and the old bridge by the Stoddard house, supposed to contain ten

acres (be the same more or less), in Galpin's Addition to the village of Excelsior." In 1881, or before, the Minneapolis & St. Louis Railroad Co. acquired a hundred-foot right of way along the westerly side of lot 41 between the lake and Second street, and located and constructed tracks thereon. The evidence does not show whether this right of way was acquired by purchase or by condemnation proceedings or how it was described. Assuming the westerly boundary of lot 41 to be the arm of the lake or slough referred to, it appears both from the oral evidence and the plat introduced that the tracks were laid along the shore of this arm or slough, but that at one or more points there were small portions of lot 41 left on the west side of the right of way. Freeman conveyed lot 41 to Charles May in 1873. In 1883 May and wife platted "May's Subdivision of Lot 41 of Galpin's Addition." In this plat no land west of the right of way was included, the plat stopping at the right of way. In 1885 May and wife conveyed lot 41, subject to the right of way, and excepting certain lots in May's Subdivision theretofore conveyed, to Rebecca Ellis Holt. In 1913 Mrs. Holt and husband gave plaintiff a quitclaim deed purporting to convey to him all their interest in that part of lot 41 Galpin's Addition, lying west of the right of way. It is under this deed that plaintiff claims title in this case. As we have already stated, there appears to be some land in lot 41, it is immaterial how little, between the right of way and the edge of the slough. Plaintiff owns this land if his grantor did, and his grantor owned it if Galpin conveyed all of lot 41 to Freeman.

The chief claim of defendant is that the deed from Galpin to Freeman describes the land conveyed as bounded on the west by the "old bridge at the Stoddard house," and that the evidence shows that this old bridge was east of the right of way. It may be conceded that a north and south line drawn from the easterly end of the old bridge would be east of the right of way, but the trouble is with holding that Galpin intended to so limit his grant. He owned all of lot 41, which extended to the slough or inlet from the lake. The property conveyed is lot 41. The conveyancer thought to make the description more certain by attempting to bound the lot. Instead of succeeding he failed to describe the lot as shown on the plat.

Under such circumstances the description by lot number controls and the rest is treated as surplusage. We must hold that Galpin intended to convey and did convey all of lot 41. Freeman, Holt and May owned it successively. It can make no difference that the Mays supposed that the lot stopped at the right of way, or that in platting the subdivision they platted no land west of the right of way. This would not divest their title to any part of lot 41 not platted, and it is worthy of note that in their conveyance to Mrs. Holt they described the property as lot 41, "subject to the right of way." Nor can it affect the case that the Holts did not understand that they owned anything west of the tracks, if in fact they did.

We reach the conclusion that on the record before us we cannot disturb the finding of the trial court that plaintiff owned a portion of lot 41 west of the right of way.

Judgment affirmed.