# Rio Bravo Oil Company et al. v. J. F. Weed et al.

No. 5055.   Decided May 16, 1932.
(50 S. W., 2d Series, 1080.)

428

*Charles D. Smith, W. D. Gordon,* both of Beaumont, *John T. Garrison, C. L. Carter, C. R. Wharton, S. H. German,* and *Baker, Botts, Andrews & Wharton,* all of Houston, for plaintiffs in error.

The trial court erred in construing the partition deed of April 13, 1901, made by and between J. M. Hebert and the Chaison heirs, and the plat attached thereto, and in giving to said instruments the effect of partitioning the right of way of the Sabine & East Texas Railway Company, because said instruments show plainly on their face, when considered in the light of all surrounding circumstances, that said parties did not partition said right of way, but only partitioned the land on each side of said right of way up to the exterior or outside lines of the same. Gladys City O., G. & M. Co. v. Right of Way Oil Co., 137 S. W., 171, 106 Texas, 94, 157 S. W., 737; New Mexico v. U. S. Trust Co., 172 U. S., 171; Western U. Tel. Co. v. Pennsylvania R. R. Co., 195 U. S., 540; Hazen v. Boston & M. R. R. Co., 2 Gray, 574; Pennsylvania S. V. Ry. Co. v. Reading Paper Mills, 149 Pa. St., 18.

When the description in a conveyance abutting on a street or highway calls to begin at a definite point on the exterior line of the street or highway, or at a definitely established monument on such line, and the calls by course and distance return to the outside line of the street or way, and thence with said line to the beginning point, by practically the unanimous weight of decision, such description is held to evince an intention not to include any part of the way in the deed and no part is conveyed. Warden v. Southern P. R. & J. Co., 178 Cal., 440, 174

Pac., 26, and other California cases cited; Chicago v. Rumsey, 87 Ill., 348; Rieman v. Baltimore B. R. Co. (Md.), 31 Atl., 444; Hunt v. Brown, 75 Md., 481, 23 Atl., 1029; Smith v. Slocomb, 75 Mass., 36, 9 Gray, 36; Grand Rapids R. R. Co. v. Hiesel, 38 Mich., 62; Betcher v. Chicago, M. & P. Ry., 124 N. W., 1096; In re Parkway, 209 N. Y., 344, 103 N. E., 508; 2 A. L. R., 1, and numerous New York cases therein discussed; Maynard v. Weeks, 41 Vt., 617.

It is only in a case of conflict or repugnancy between the general description and a particular description that either can be disregarded or in any manner modified or varied.

Where there is a repugnance between a general and a particular description in a deed the latter will control, but whenever possible, the real intent is to be gathered from the whole description, including the general as well as the particular.

Where the deed contains two descriptions of land conveyed, equally explicit, but between which there is a repugnance, that description which the whole instrument shows best expresses the intention of the parties must control. The court will look into the surrounding facts, and will adopt the description which is most definite and certain, and which, in the light of the surrounding circumstances, can be said to effectuate most clearly the intention of the parties. Devlin on Deeds, 3rd Ed., secs. 1039 and 1039; Cullers v. Platt, 81 Texas, 258; Stark v. Brown, 210 S. W., 811; Browne v. Gorman, 208 S. W., 385.

"The right of way of a railroad is not a public highway in the sense of a public road or street, and the rule of construction which applies to a deed for land bounded by a public highway does not apply in this case so as to make the deed convey land not included in its terms." Couch v. T. & P. Ry. Co., 99 Texas, 464; Stuart v. Fox, 129 Me., 407, 152 Atl., 413; Mitchell v. Bass, 26 Texas, 372.

*Major T. Bell, Peveril O. Settle,* both of Ft. Worth, *D. Edward Greer, John E. Green, Jr.,* both of Houston, *Hugh L. Stone,* of Pittsburg, Pa., *Orgain & Carroll,* of Beaumont, *R. L. Batts,* of Austin, and *F. A. Williams,* of Galveston, for defendants in error.

The right-of-way deed from Martha D. Janes to the Sabine & East Texas Railroad Company conveyed no interest to that company in the minerals beneath the surface, but only an easement two hundred feet wide across the Douthit survey, limited solely to railway purposes and for the express "consideration of the benefits and advantages that will accrue to me by the

construction of a railroad over lands owned by me." Calcasieu Lbr. Co. v. Harris, 77 Texas, 23; Gladys City Oil, etc., Co. v. Right of Way Oil Co., 137 S. W., 171, 106 Texas, 94, 157 S. W., 737.

When two parties, as Hebert and the Chaisons, under an express agreement to partition a particular fifty-two acres, no more, no less, of land, conveyed to each other on a plat prepared for that purpose, the same number of lots, the same usable acreage, and *the same frontage on a right-of-way,* which constitutes a part of the fifty-two acres, each grantee takes to the center of the way because that effectuates their purpose. There is no room left for an inference—if an inference were permissible without an express reservation—that they intended to retain in common title to any part of the fifty-two acres, because that would be contrary to their expressed purpose. Cartwright v. Trueblood, 90 Texas, 537; Wallace v. Crow, 1 S. W., 372; Johnston v. McDonnell, 37 Texas, 595; Lot v. Kaiser, 61 Texas, 672; Galveston, H. & S. A. Ry. Co. v. Pfeufer, 56 Texas, 66; Houston & T. C. Ry. Co. v. McKinney, 55 Texas, 187; East Line & Red River R. R. Co. v. Garrett, 52 Texas, 133; Kahn & Kahn, 94 Texas, 119; Paris Grocer Co. v. Burks, 101 Texas, 113-114.

Where two parties, as Hebert and the Chaisons, own in common exactly fifty-two acres of land, subject only to a right-of-way across it, the share of each therein being exactly twenty-six acres, agree to partition the fifty-two acres, and in pursuance of such agreement convey to each other in severalty "his" or "their" "share of said fifty-two acres of land," it is mathematically certain the fee in the right-of-way was included in the division. Baker v. City of St. Louis, 7 Mo. App., 429; Snoddy v. Bolen, 122 Mo., 479, 25 S. W., 932; Dulce Realty Co. v. Staed Realty Co., 245 Mo., 417, 151 S. W., 415; Van Winkle v. Van Winkle, 184 N. Y., 193; 77 N. E., 33; Mott v. Eno, 181 N. Y., 346, 74 N. E., 229; Miller v. Indianapolis, 123 Ind., 75, 24 N. E., 231; Clark v. Parker, 106 Mass., 554; Patrick v. Jefferson Insurance Co., 176 N. C., 660, 97 S. E., 657.

"The right to have the use of this strip of land restricted to the purposes for which it was dedicated is a valuable right to the owners of the abutting lots, and greatly enhances the value of such lots, and this right clearly passed to the purchasers of the lots, regardless of whether the fee to the strip was conveyed by their deeds." Gulf Sulphur Co. v. Ryman, 221 S. W., 310; Temple v. Sanborn, 91 S. W., 1095; Sanborn v. Amarillo, 93 S. W., 473; Nave v. Clarendon, 216 S. W., 1110;

Barclay v. Dismuke, 202 S. W., 364; Louisville, N. A. & C. Ry. Co. v. Malott, 135 Ind., 113, 34 N. E., 708; Motoramp Garage Co. v. Tacoma, 136 Wash., 589, 241 P., 16.

"Where land is described as a subdivision, according to a map of the block on file, and also by metes and bounds, the former description will prevail if there be a conflict." (Section 1038-a, Devlin on Deeds).

This is also the rule in Texas as same is held by the Supreme Court. Arambula v. Sullivan, 80 Texas, 615.

The rule is of universal application in other states. O'Herrin v. Brooks, 67 Miss., 266, 6 So., 844; Masterson v. Munro, 105 Calif., 431, 38 Pac., 1106; Moore v. Minneapolis & S. P. Ry. Co., 129 Minn., 237, 152 N. W., 405; Nash v. Wilmington & W. Ry. Co., 67 N. C., 413; Cook v. Hensler, 57 Wash., 392, 107 Pac., 178; 8 R. C. L., 1082, sec. 127.

*T. D. Gresham,* of Dallas, *W. A. Keeling,* of Austin, and *Swearngen & Miller,* of San Antonio, filed briefs and arguments as amicus curiae.

MR. JUDGE LEDDY of the Commission of Appeals delivered the opinion for the court.

This case involves the title to .43 acres of land, being a strip 104.7 feet by 196.3 feet, a part of the John Douthit survey in Jefferson county, Texas, included within the right-of-way of the Texas & New Orleans Railway.

This suit was instituted by defendants in error, J. F. Weed, and the Gulf Production Company, against plaintiffs in error to restrain the latter from drilling said tract of land for oil. After a hearing the injunction was granted, as prayed for. An appeal was taken to the Court of Civil Appeals, where the judgment of the trial court was affirmed. (300 S. W., 171).

The Douthit survey of land, of which this tract was a part, contained 152 acres. Martha D. Janes is shown to have acquired it through a regular chain of title. On November 1, 1881, she conveyed to the Sabine & East Texas Railway Company a right-of-way 200 feet in width across the tract. This easement subsequently passed to and is now owned by the Texas & New Orleans Railway Company.

The title to the entire Douthit survey passed regularly from Martha D. Janes to Jeff Chaison and J. M. Hebert, subject to the right-of-way referred to.

Chaison and Hebert sold 100 acres off the south portion of the survey, leaving a balance of fifty-two acres, upon which

was situated the railroad right-of-way 200 feet in width, and containing 3.32 acres.

After Chaison's death his heirs entered into an agreement with J. M. Hebert for a partition of this land, and in order to carry such agreement into effect, the tract was subdivided into eight lots. The plat of this subdivision shows the boundaries of the lots, the acreage of each, and their location with reference to the right-of-way. Thereafter Hebert and the Chaison heirs executed a partition deed, the pertinent portions of which are as follows:

"Know all men by these presents: That we" the Chaison heirs, and "J. M. Hebert, for and in consideration of executing a partition between J. M. Hebert, on the one hand and the said" Chaison heirs "on the other hand, have agreed to the following partition of a part of the John Douthit survey of land situated in Jefferson County, Texas, it being fifty-two (52) acres off the northeast part or end of said survey, * * * said fifty-two acres and the subdivision thereof being fully shown and described by the hereto attached plat, which is marked exhibit X and made a part of this deed. That is to say, the said" Chaison heirs (naming them) "hereby release and relinquish unto said J. M. Hebert as his share of said land to be held by him in severalty, lots and blocks No. two (2) and Four (4) as shown by said plat, containing 5 and 27/100 acres each. Also Lots or Blocks Six (6) and Eight (8) as shown by said plat containing six and nine-tenths (6.9) acres each.

"To have and to hold unto one the said J. M. Hebert in severalty as his share of said fifty-two acres, and the said J. M. Hebert, releases and relinquishes unto said" Chaison heirs (naming them) "the following lots or blocks as shown by said plat which is attached hereto each being a part of said 52 acres of said John Douthit survey to wit:

"Lots or Blocks One (1) and Three (3) of five and 27/100 acres each: Also lots and blocks Five (5) and seven (7) of six and nine-tenths acres (6.9) each.

"To have and to hold unto the said" Chaison heirs (naming them) "in severalty as their share of said Fifty-two acres of land."

The plat attached to this deed, with the land in dispute, shown in the shaded portion, is as follows:

434

Plat
Showing Subdivisions
of
52 Acres of Land
out of the
Northeastern end of the
John Douthit Survey
Four miles south of Beaumont
in Jefferson County, Texas

This deed and plat were filed for record on April 17, 1901, in the deed records of Jefferson county, Texas.

On April 9, 1901, prior to the execution of the partition deed, Hebert conveyed an undivided one-half of his undivided

one-half interest in the fifty-two acres of land to Weed, the description of the land conveyed being as follows:

"The undivided one-half of my undivided one-half of, in and to all that certain 52 acres of land, being the northeast end of the John Douthit survey, in said Jefferson County, Texas, about four miles south of Beaumont and more particularly described as follows, towit:"

Then follows in metes and bounds the description of the fifty-two acres without any mention being made of the railroad right-of-way.

It appears from the record that this deed was not recorded immediately after the execution. It seems that Hebert and Weed desired the fifty-two acres partitioned between the former and the Chaison heirs, on the theory that two parties could partition the fifty-two acres easier than three. With this in view, Hebert agreed to partition the fifty-two acres with the Chaisons and then to convey to Weed one-half of the part received by him.

By deed dated April 17, 1901, Hebert conveyed to Weed a portion of the land received by him under said partition, the description in said deed being as follows:

"All those certain tracts and parcels of land situated in Jefferson County, Texas, and being parts of the John Douthit survey and more particularly described as follows:

"First: The southeast one-half of Lot No. Six of the subdivision of a tract of fifty-two acres of land off the north end of the said John Douthit survey as shown by the plat attached to the deed of partition of said 52 acre tract of land between said J. M. Hebert & the estate of Jeff Chaison dated 13th day of Apl. A. D. 1901 and filed for record in the County Clerk's office in Jefferson County, Texas, on the 17th day of April, A. D. 1901, in which said partition lots No. Two, Four, Six and Eight were allotted to me the said J. M. Hebert, the said southeast half of the said Lot No. six hereby conveyed is more particularly described as follows, to-wit:

"Beginning at the east corner of said Lot No. six on the west side of the Sabine & East Texas Railway right of way on the south west side of the track, where the south east line of said Douthit survey crosses said right of way line, said point being 1627 6/10 feet south 45 degrees west from the east corner of said Douthit survey;

"Thence south 45 degrees west with said line 778 feet to the south corner of said tract No. six and the east corner of Tract No. Seven;

"Thence North 45 degrees west with the dividing line of Lots Nos. Six and Seven 186 2/10 feet to corner;

"Thence North 45 degrees east 835 1/10 feet to the line of said Railroad right of way;

"Thence S. 27 degrees & 40 Minutes east 193 3/10 feet with said right of way line to the place of beginning, containing 3 45/100 acres of land.

"Second: Also one undivided one half of Lots two, four and eight of said subdivision as shown by the plat of said subdivision of said tract hereinbefore referred to, which said deed and plat hereto attached are here referred to for more particular description of the land therein conveyed, together with one half of all my right to or interest in any and all gas, oil or other minerals in and under said two lots, four and eight or to which I am or may be entitled on account of said land."

Under the view we have taken of this case the rights of the contending parties depend upon a proper construction of the partition deed executed by Hebert and the Chaison heirs.

Defendants in error contend that the judgment of the trial court establishing their interest in this land is justified upon three grounds:

First: That the partition deed was prepared and executed in the light of the common law rule that whenever a grantor conveys to a grantee a tract or parcel of land abutting on a highway, street, or alley, public or private, the grantee takes to the center of the way, in the absence of an express reservation in the deed, if the grantor owns that far.

Second: That the partition deed evinces the clear intention of the parties thereto to divide the entire fifty-two acres and the court properly gave effect to such intention.

Third: That if the partition deed be ambiguous, then the practical construction deliberately given the same by both Hebert and the Chaison heirs should control its interpretation.

Plaintiffs in error assert that ownership of the land involved should have been established in them for these reasons:

First: Because the general rule of construction which applies to a deed to land bounded by a public highway, street, or stream, has no application in the case of a railroad right-of-way.

Second: Because the partition deed of April 17, 1901, between Hebert and the Chaison heirs shows upon its face, as a matter of law, that the right-of-way of the Texas & New Orleans Railway Company was not partitioned, and no part of same was included in lot 6 of said partition, but that title

thereto remained in Hebert and the Chaison heirs as tenants in common, subject to the right-of-way privileges in favor of the railway company.

At the outset it may be said, if defendants in error are correct in their proposition of law, that the same legal presumption which applies to the conveyance of land abutting on a public highway, street, or stream, is applicable to a railroad right-of-way, then it necessarily follows that the partition deed between Hebert and the Chaison heirs as well as the deed from Hebert to Weed must be construed to pass the title to the center of the railroad right-of-way, as neither of said deeds contained any express reservation of the land included in the railroad right-of-way. The fact that it appears from the plat that the lines of the lots fronting on the railroad stop at the exterior line of such right-of-way is not of itself sufficient to exclude the conveyance of the title to the center of the railroad. It was expressly so determined in the case of Texas Bitulithic Company v. Warwick 293 S. W., 160, in which the Commission of Appeals quoted with approval the doctrine announced in Corpus Juris (9 C. J., p. 201), as follows:

"The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact that the land is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street."

It is therefore necessary for us to determine whether said legal presumption applying to lots abutting on highways and streams is applicable to the conveyance of land abutting upon a railroad right-of-way. In the consideration of this question it becomes important to ascertain the reasons underlying the rule established by the courts at an early date to the effect that a legal presumption exists that a person conveying land situated upon a public highway or stream intends to convey to the center line thereof, in the absence of an expression of a clear and unequivocal intention to the contrary.

·A number of courts announce that the rule of presumption under discussion is one compelled by a sound public policy based upon the experience that separate ownership of long narrow strips of land, distinct from the adjoining land on each side, has been proven to be prolific of private disputes and public disturbances. For the purpose of avoiding these disastrous consequences, the arbitrary rule of construction is applied to a deed of land abutting upon a public highway or non-

navigable stream so as to convey title to the center line of such highway or stream, unless there is an express reservation of such way by the grantor. Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan., 202, 237 Pac., 913; Paul v. Carver, 26 Pa., 225; Snoddy v. Bolen, 122 Mo., 479, 25 S. W., 932; dissenting opinion of Judge Redfield in Buck v. Squires, 22 Vt., 484.

Other courts in applying this rule of presumption do so, not upon any consideration of public policy, but merely as a means of giving practical effect to the real intention of the grantor. Dennis v. Wilson, 107 Mass., 591; Motley v. Sargent, 119 Mass., 231; Stuart v. Fox, 152 Atl., 413; 3 Kent, 349; Woolverton v. Miller, 83 Ind. App., 578, 148 N. E., 621.

■ The use of this presumption is merely the application in a different form of the familiar rule of construction which has always been enforced by the courts, that is, to indulge the presumption that a grantor intends to convey to his grantee all of the appurtenant rights incident to the beneficial enjoyment of property which he had conveyed. In other words, when a person conveys a piece of property abutting upon a public highway or non-navigable stream it is but natural to assume, in the absence of an express reservation to the contrary, that he intends to convey the same with all of the beneficial rights enjoyed by him in its use. Such benefits and advantages are usually of compelling force in inducing the sale of the property. From time immemorial deeds of conveyance have been made to convey the title to land "together with all the rights and appurtenances thereto in anywise belonging or appertaining." It is uniformly held that appurtenances to premises essential to the proper enjoyment thereof will be held to pass whether the word "appurtenances" be used or not. Simmons v. Winters, 21 Ore., 35, 28 A. S. R., 727; Sweetland v. Olsen, 11 Mont., 27; Crooker v. Benton, 93 Cal., 365.

"The word 'appurtenances,' " says the Supreme Court of California, in the case of Caves v. Crafts, 53 Cal., 135, "is not necessary to the conveyance of an easement. The general rule of law is that when a party grants a thing he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is a privilege off and beyond the located boundaries of the land or tenements conveyed."

In the late case of Stuart v. Fox, 129 Me., 407, 152 Atl., 413, decided by the Supreme Court of Maine, the substantial reasons

which underlie the presumption under discussion are fully set forth. It is there shown that there are certain appurtenances and privileges incident to strips of land burdened with an easement for the public as a highway. They are thus described:

"The ownership of the fee in the highway in early times, when the means of travel were primitive, was of distinct benefit to the owner of the adjoining land, and today, even with the enlargement of the public right, this claim to the freehold is of advantage to the abutting property holder. Thus the proprietor of the soil in the highway had the right to the grass along its untraveled border, and he could maintain trespass against one who permitted his cattle to graze there. Woodruff v. Neal, 28 Conn., 165; the right to make a reasonable use of it for the unloading and temporary storage of fuel for the use of his house, Commonwealth v. Passmore, 1 Serg. & R. (Pa.), 217, 219; the right to the minerals under it, Chester v. Alker, 1 Burr., 133, 143; the right to sink drains under it, Perley v. Chandler, 6 Mass., 454, 4 Am. Dec., 159; the right to build vaults under the street for storage or other uses connected with his buildings, Allen v. City of Boston, 159 Mass., 324, 34 N. E., 519, 38 Am. St. Rep., 423; the right to plant ornamental or shade trees, Wellman v. Dickey, 78 Me., 29, 2 Atl., 133. Other advantages associated with the enjoyment of the abutting property by reason of the ownership of the fee in the highway could be enumerated."

Similar benefits and advantages enjoyed by those owning land abutting on non-navigable streams furnished a substantial basis for the extension of the presumption that a grantor conveying land bounded thereon intends to convey title to the center thereof, where there is no express reservation in the deed of the title to such stream. In discussing the similarity of the reasons for the application of the rule to conveyance of land situated on non-navigable streams, the same court observed:

"An almost perfect analogy with the rule as to highways is that governing the boundaries of land on non-navigable streams. The title to land so bounded extends to the thread of the stream unless a contrary intent appears. Lincoln v. Wilder, 29 Me., 169; Bradford v. Cressey, 45 Me., 9; Wilson v. Harrisburg, 107 Me., 207, 77 Atl., 787. This was the rule in England as far back as the time of Lord Hale and was brought by the colonists to New England as a part of the common law. The riparian proprietor owns the bed of the stream and all but the public right of passage. Pearson v. Rolfe, 76 Me., 380. As

he could take herbage from the highway for his cattle, so he may take water from the streams, Blanchard v. Baker, 8 Me. (8 Greenl.), 253, 266, 23 Am. Dec., 504; as he could use the land under the highway so long as the public right of passage was not affected, so may he use the bed of the river, Carlton v. Cleveland, 112 Me., 310, 92 Atl., 110. He is entitled to the ice that forms in winter, and to the rocks and stones in the stream, and he may use its momentum for power. Pearson v. Rolfe, supra. These rights, of such immeasurable benefit to the proprietor of the shore, are of little advantage disconnected with the ownership of it. Hence we have the same presumption as in the case of highways."

■ We think the legal presumption is sustained by sound reason when it is based upon the fact that valuable rights and privileges appurtenant to property should be presumed to pass in a conveyance thereof in the absence of a clear and unequivocal intention to the contrary. It is going a long way, however, when such presumption is given effect strictly upon considerations of public policy, based upon the strip or gore theory. It would seem that the public policy involved should be more properly one for legislative action than for judicial determination. In construing an instrument involving the conveyance of land courts should be concerned more in arriving at and effectuating the true intention of the parties than in enforcing an arbitrary rule of construction based solely upon considerations of public policy.

The court in Stuart v. Fox, supra, justified the application of the rule in conveyances of land bounded upon highways or non-navigable streams upon reasons which we think are perfectly sound and logical. It was there held that the rule should not be applied upon mere considerations of public policy. There was before the court in that case the question as to whether it would extend this presumption to the conveyance of land bounded by a railroad right-of-way. It refused to so extend the rule, stating that the underlying reasons for applying it to streams and highways did not exist in the case of land bounded upon a railroad right-of-way. It was assumed that the railroad's use of the right-of-way was exclusive and that therefore there were no appurtenant advantages in connection with such strip of land which the adjoining land owner was entitled to enjoy in the proper use of his premises.

■ We do not agree with this latter assumption. It may be admitted that one owning land adjacent to a railroad right-of-

way does not enjoy the same advantages and benefits as are incident to property bounded by a highway or stream. There are, however, certain benefits and privileges just as substantial, though differing in kind, enjoyed by a person owning land situated upon a railroad right-of-way. Under the law of this State, railroads are required, upon the application of abutting land owners, to put in private road crossings at certain specified distances along its right-of-way for the benefit of such owners. Article 6321, R. S., 1925. These private ways are of material advantage to the adjacent land owners as they furnish means of ingress and egrees to and from their premises as well as convenient outlets to public highways.

Again, railroad companies, in building their road beds, often construct high dumps on portions of their right-of-way, while on other portions deep cuts are made. The statutes of this State require them in constructing their road bed to provide and maintain such culverts and sluices as may be necessary to protect adjacent owners in the proper drainage of their lands. Article 6328, R. S., 1925. If it be determined that these narrow strips of right-of-way do not pass with the grant when land is sold which abuts on a railroad right-of-way, upon abandonment of the easement by the railway company, the adjoining land owner will be deprived of substantial benefits and privileges, as the then owner of such narrow strip of land would not be required to maintain private roads across the same, nor would he be subject to the same burden as railway companies in maintaining culverts and sluices.

It is apparent, therefore, the adjoining owner enjoys valuable privileges and advantages in the ownership of the narrow strip of land burdened with the railroad easement. On the other hand, such a strip is usually of little practical value to his grantor. These material advantages constitute appurtenance to the adjoining land. They furnish as sound a basis for the application of the presumption of their conveyance as exists in the cases of grants of land situated on highways and streams. An owner of property adjoining a railroad right-of-way in conveying the same to another without including the narrow strip burdened with the railroad easement is omitting to grant valuable appurtenant rights incident to the beneficial use and enjoyment of the premises, as much so as he is when he fails to convey to the center of a public highway or stream.

The question as to whether the presumption should be extended to conveyances of land bordering upon railroad right-of-ways has been often presented to the courts of this country.

The overwhelming weight of authority sustains the application of the rule to conveyances of land situated upon railroad right-of-ways.

■ Corpus Juris, vol. 9, p. 206, sec. 112, announces the rule with reference to the conveyance of lots by a plat which shows a railroad right-of-way as a part thereof as follows:

"Where land is bounded generally on a railroad, the grantee will be presumed to take as far as his grantor owns."

There is cited to sustain the foregoing proposition the following cases: Williams v. Savannah, etc. R. Co., 94 Ga., 540, 20 S. E., 487; Richardson v. Palmer, 38 N. H., 212; Foster v. Foster, 81 S. C., 307, 62 S. E., 320; Wright v. Willoughby, 79 S. C., 438, 60 S. E., 971; Witter v. Harvey, 1 McCord (S. C.), 67, 10 Am. Dec., 650; Church v. Stiles, 59 Vt., 642, 10 Atl., 674; Maynard v. Weeks, 41 Vt., 617; Buffalo, etc., R. Co. v. Stigeler, 61 N. Y., 348; Pennsylvania R. Co. v. Ayres, 50 N. J. L., 660, 14 Atl., 901, Boney v. Cornwell, 117 S. C., 426, 109 S. E., 271; Henry v. Board of Trustees, 207 Ky., 846, 270 S. W., 476.

The only authority cited by Corpus Juris to the contrary is that of Thompson v. Hickman, 1 Ch. Div. (1907), 550, 556, which is an English case decided in 1907.

The Supreme Court of South Carolina, in Wright v. Willoughby, supra, in announcing the rule above laid down, said:

"Besides, it seems not disputed that Braveboy, the grantor, owned the fee in the strip of land sixty-five feet wide, held by the railroad as a right of way, and the presumption is that he intended to convey and not retain the narrow strip of sixty-five feet west of the railroad track, which would be of little, if any, use to him."

In Roxana Petroleum Co. v. Sutter, a late case reported in 28 Fed. (2d) 159, the Circuit Court of Appeals, of which Judge Sanborn was a member, reached the same conclusion as to the effect of a deed conveying land abutting on a railroad right of way. The court made this observation:

"Counsel for the railroad company further contend that when the owner conveyed a tract of land abutting on a railroad right of way through which the grantor owns the servient estate and the railroad the dominant estate for right of way purposes, his conveyance passes to his grantee such servient estate unless the intention not to do so be clearly indicated."

This contention was sustained, the court holding that every reason for applying the rule to public highways existed in the case of land abutting on a railroad right-of-way.

To the same effect is the holding in the cases of Center Bridge Co. v. Wheeler, 86 Conn., 585, 86 Atl., 11; Rice v. Clear Springs Coal Co., 186 Pa., 49, 40 Atl., 149.

■ The case of Couch v. Texas & Pac. Ry. Co., 99 Texas, 467, 90 S. W., 860, is cited to sustain the proposition that the presumption applicable to public highways and streams does not apply in case of a conveyance of land bounded by a railroad right-of-way. This expression used by Judge Brown is cited as indicative of such holding:

"The right of way of a railroad is not a public highway in the sense of a public road or a street and the rule of construction which applies to a deed for land bounded by public highways does not apply in this case so as to make the deed convey land not included in its terms."

This language standing alone would seem to sustain plaintiff in error's view, but when construed in connection with that which immediately follows there is no such result. Immediately following the language above quoted Judge Brown states:

"At the time the deed from Couch to Norton and McGowan was made Couch owned the land on both sides of the railroad and after the sale the entire right of way remained in connection with his land south of the railroad."

He then continues:

"*Under this state of facts* there is no ground for a presumption that Couch intended to convey that portion which lay between the lines described in the deed and the railroad track." (Italics ours).

It is thus made clear that the presumption was not applied in that case by the distinguished jurist who rendered the opinion for the obvious reason that the grantor owned lands on both sides of the railroad. His failure to convey to the center of the railroad right-of-way did not leave a narrow strip of land disconnected from any other tract. Such strip was as much an appurtenant to the grantor's remaining tract as it was to the tract conveyed. It was as valuable to him as a part and parcel of his remaining tract as it was to the grantee. Evidently Judge Brown declined to apply the presumption because of the recited fact that the grantor at the time of the conveyance owned land on both sides of the railroad right of way. There was no other reason for his stating such fact except for the purpose of showing that no basis existed for the application of this presumption.

Does the application of the presumption in the construction

of the partition deed result in any different conclusion than would be compelled by a fair construction of the terms of such deed? In other words, does the partition deed, when fairly construed, show that the parties intended to partition the entire fifty-two acres, or did they purpose to divide only the land included within the definite boundaries of the numbered lots, holding these in severalty while continuing to hold as tenants in common the land covered by the railroad right of way?

■ Prior to the execution of the partition deed the fee to the land occupied by the railroad company as a right of way belonged jointly to Hebert and the Chaison heirs. It must be conceded that they were privileged at their pleasure to make partition of the land on both sides of the railroad right of way and thus remain tenants in common in the strip over which the right of way was located, or they could include the fee of the right of way in the partition, subject to the easement owned by the railway company. Sibley v. Holden, 10 Pick, 249 (Mass.), 20 A. D. 521; Hill v. Woodward, 100 Miss., 879, 57 So., 294; Ann. Cas., 1914A, 390.

■ The courts have established many rules to aid in the construction of deeds of conveyance. The prime object and purpose of such rules is to enable them to ascertain and give effect to the true intention of the parties unless such intention is inconsistent with some settled rule of law. In construing a deed effect must be given, if possible, to every part of the deed, each clause being considered separately and being governed by the intention of the parties fairly deducible from the provisions of the entire instrument. In other words, the intention must be gathered primarily from a fair consideration of the whole instrument and the language employed therein, and the construction given it should harmonize with the terms of the deed, including its scope, subject matter, and purpose.

Bearing in mind these cardinal rules of construction, we shall undertake to determine if the intention of the parties to the deed with respect to the partition of the entire 52 acres, may be ascertained without resort to extrinsic evidence.

■ In the first place these parties recite that they have made an agreement to partition the particular fifty-two acres of land then owned by them in common. They say this in language too clear to admit of any controversy as to its meaning. In order to accomplish their declared purpose they cause to be prepared a plat and subdivision of the land. The subdivision represented by the plat is then described by them as being *a*

*subdivision of said 52 acres.* There is then conveyed to each of the parties certain designated lots. The division is so arranged that each will secure one-half of the usable land and as nearly as practicable one-half of the land burdened with the railroad easement. It will be observed that each released to the other alternate lots facing on the line of the right of way of almost identically the same acreage in the right of way. As further indicating a clear and specific intention upon the part of the parties to the deed that no part of said land would thereafter be owned in common, the deed contains the recital that Hebert accepts Lots 2, 4, 6 and 8, "to have and to hold *in severalty as his share of said 52 acres."* Hebert releases to the Chaison heirs Lots 1, 3, 5, and 7, "to have and to hold unto the said Chaisons *in severalty as their share of said 52 acres of land."*

This language cannot be harmonized with the theory that a portion of the fifty-two acres covered by the railroad right of way was thereafter to be held in common by these parties. They could not hold the parts allotted to them in severalty as their respective shares of the fifty-two acres unless the whole tract was divided because it would not in fact constitute such share.

Plaintiffs in error vigorously assert that the plat must be considered as a part of the deed, as it furnishes the only description by which the partition was effected; that when the plat is examined it is found that the distances shown thereon are such as to stop the lines of the lots fronting on the railroad at the exterior line of the right of way. It is further asserted that the specific acreage marked on each lot can only be arrived at by a computation of the area excluding the right of way. In the light of these facts, it is argued that for the court to extend the distance of the lines running to the right of way beyond their indication on the plat would be to make a different division of this land than that which the parties have made for themselves.

The law books are replete with instances where the courts have disregarded specific and particular calls in a deed and so construed the same as to pass the title to land not included in the boundaries of such field notes when such construction was necessary to effectuate the clear intention of the grantor as manifested by language used in other portions of the deed. This is well illustrated in a case where a beginning call of a description of land in a deed runs in exactly the opposite direction from which it was intended by the grantor, resulting

in no part of the land intended to be conveyed being covered by the metes and bounds description in the deed. Under such circumstances, where the grantor has in other portions of the deed clearly indicated the particular tract of land intended to be conveyed, the court effectuates such intention by giving the beginning call in the deed an opposite course. The result of this interpretation is to construe the deed to pass title to land, none of which is situated within the boundaries of definite and specified field notes. In such instance the plainly expressed intention of the grantor is not permitted to be defeated, but is made effective.

So it is in this case. The parties to this instrument have clearly revealed, by the language used, a dominant purpose to partition the entire fifty-two acres. The plat was designed merely as a medium through which such purpose might be accomplished. If the dominant purpose of the parties is to be given effect, then each of the joint woners would be entitled to an equal division of such land, or twenty-six acres. Giving to each party the frontage on the center of the right of way accomplished as near as practicable this purpose, and reconciles any apparent conflict in the description of the land with other recitals in the deed. The land owned in common is thereby divided in accordance with what they have declared to be their prime object and purpose. To hold that the land included in the right of way was intended to be thereafter held in common would not only defeat this purpose, but it would bring the terms of the deed into irreconcilable conflict. No extrinsic evidence is required to enable us to gather the intention of the parties to divide the entire fifty-two acres.

■ But, if it be conceded that this deed, when reasonably and fairly construed, is ambiguous as to whether the land included within the right of way was intended to be partitioned, still plaintiff in error's position is not improved. In such case their contention is foreclosed by the fact that all parties to this transaction, subsequent to the execution of the partition deed, have given the same the practical construction that it operates to partition the entire fifty-two acres.

It is a familiar rule of construction of written instruments that where a contract is ambiguous in its terms a practical and reasonable construction given it by the parties thereto, before any controversy has arisen as to its meaning, will generally be given controlling effect by the courts. Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Texas, 263, 168 S. W., 115;

San Antonio St. Ry. Co. v. Adams, 87 Texas, 131, 26 S. W., 1040; Perry v. Langbehn, 113 Texas, 72, 252 S. W., 475; Michie's Dig., vol. 4, p. 599.

It is well said by the court in the case of Livingston Oil Corporation v. Waggoner, 273 S. W., 906:

"It is to be assumed that parties to a contract know best what was meant by its terms; and are the less liable to be mistaken as to its intention; that each party is alert to protect his own interest and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it to be."

That the parties to this deed subsequently construed it as operating to divide the entire fifty-two acres plainly appears from their actions and conduct in making conveyances of this property and in proceedings had in suits in court to which they were parties.

On April 17, 1901, the Chaison heirs conveyed to H. L. Fagin lots 5 and 7 allotted to them by the partition deed. The deed to Fagin contained this recital: "said fifty-two acre tract was previously owned by us in common with J. M. Hebert, but which was recently partitioned between us and the said J. M. Hebert by deed dated April 13, 1901."

An agreed judgment was entered in the case of Douthit v. Chaison, May 25, 1902, wherein Hebert and the Chaison heirs and their vendee recovered Lots 1 and 8 inclusive, "according to the plat of the subdivision of said 52 acres of land."

On October 29, 1904, an agreed judgment was entered in the case of Douthit v. Chaison Heirs, wherein Hebert and the Chaisons and their vendees recovered the entire Douthit 152-acre survey, including the fee in the right of way.

On April 25, 1906, an agreed judgment was entered in the case of Anderson v. Lucas, wherein Hebert and the Chaison heirs and their vendees recovered lots 1, 2, 3, 4, 5, 6, 7, and 8. Among other things this judgment recited "all of which said blocks are fully described in a partition deed dated April 13, 1901, between J. M. Hebert, Clara Chaison, and the heirs of Jeff Chaison, deceased * * * *and said blocks, together constitute 52 acres of said Douthit survey which was partitioned between said parties by said deed dated April 13, 1901.*"

It is thus seen that the parties to this particular deed have voluntarily placed in their own chain of title instruments containing the recitation that these former joint owners had in fact divided the entire fifty-two acres. Not only this, but these

same parties, in a suit in which title to the fifty-two acres was involved, solemnly agreed as a basis for judgment in their favor that the specific lots 1 to 8, represented by the plat attached to the partition deed, *together constituted fifty-two acres which were divided between them by the partition deed.*

It would seem that the express declaration in the partition deed that they had agreed to partition the fifty-two acres; that they accepted the portions allotted to them as their share of the same, and their subsequent solemn recitals in deeds and judgments which became a part of their chain of title, that they had in fact partitioned this tract of land, ought to be, and we hold is, conclusive of the proposition that the partition deed when rightly construed divided the entire fifty-two acres.

But one other contention need be noted. Plaintiffs in error assert that even if it be conceded that the title to lot 6 allotted to Hebert in the partition extended to the center of the right of way, still this court should hold that the land involved was not included in the deed from Hebert to Weed. The basis for this contention is that in said conveyance the land is conveyed not only as the southeast half of Lot No. 6, but a specific description is given of the same by metes and bounds; that the calls for the railroad right of way line must be given effect and cannot be extended so as to include any part of the railroad right of way.

■ This contention is fully answered by the application of the legal presumption heretofore discussed. In addition to this, it must be overruled because of the well established principle of law that where there is a conflict between a specific description by metes and bounds and the lot and block number by which a tract of land is conveyed, the latter description will usually prevail. Arambula v. Sullivan, 80 Texas, 615, 16 S. W., 436; Masterson v. Monroe, 105 Cal., 431, 38 Pac., 1106; Moore v. Minneapolis & St. P. Ry. Co., 129 Minn., 237, 152 N. W., 405; Nash v. Wilmington & W. Ry. Co., 67 N. C., 413; Cook v. Hensler, 57 Wash., 392, 107 Pac., 178; O'Herrin v. Brooks, 67 Miss., 266, 6 So., 844; R. C. L., vol. 8, p. 1082, sec. 137; Devlin on Deeds, sec. 1038A.

In his Work on Deeds, Mr. Devlin states the rule to be:

"Where land is described as a subdivision according to a map of the block on file and also by metes and bounds, the former description will prevail if there be a conflict."

In R. C. L., p. 1082, sec. 137, the author announces the rule in this language:

"In the absence of something in a deed clearly showing a

different intention, a description of the land as a certain lot or subdivision generally conveys the whole thereof, notwithstanding a further description by metes and bounds which embraces a lesser area."

This rule was recognized by the Supreme Court of this State in Arambula v. Sullivan, above cited, in which it was held that the lot and block numbers "do more definitely indicate the identity of the land conveyed as well as the intention of the parties, than the call for the length and width of the lots."

Again, in the deed from Hebert to Weed conveying the southeast half of lot 6, there is plainly manifested an intention on the part of the grantor to convey one-half of the lot numbered six which was allotted to the grantor by the deed of partition. The language of the deed is that the half conveyed is one-half of lot 6 in the subdivision of the fifty-two acres as shown by the plat attached to the deed of partition, and that it is the southeast half of the Lot No. 6 which was allotted to J. M. Hebert in that partition. We would run counter to what we conceive all parties must have understood by such language should we hold that the half lot conveyed was not the southeast half of the parcel of land which we hold was allotted to Hebert as lot numbered six and which was shown in the plat as Lot No. 6.

Then, too, if we should construe Hebert's deed to Weed as omitting the part of lot 6 located within the railroad right of way it would bring about an unequal and unfair division of this land when Hebert was under obligation to convey to Weed one-half of the land received by him in the partition with the Chaison heirs. The opposite conclusion gives effect to his declared intention and fairly discharges his obligation to Weed.

The conclusions reached require an affirmance of the judgment of the Court of Civil Appeals, and it is so ordered.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.