## FEDERAL CRUDE OIL CO. v. YOUNT-LEE OIL CO. et al.
### No. 9012.

Circuit Court of Appeals, Fifth Circuit.

April 21, 1939.

Rehearing Denied May 25, 1939.

172

Wm. Durr Gordon and E. E. Easterling, both of Beaumont, Tex., and Ocie Speer, of Austin, Tex., for appellant.

C. T. Duff, Will E. Orgain, and Beeman Strong, all of Beaumont, Tex., and C. R. Wharton, of Houston, Tex., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Upon motions by each party for summary judgment on facts not disputed Federal Crude Oil Company's bill against Yount-Lee Oil Company, Texas & N. O. Railway Company, and Rio Bravo Oil Company was dismissed and the plaintiff therein appeals.

A little over three-quarters of an acre of land included in the Railway Company's right of way from which a great quantity of oil has been taken is in controversy. It is a part of or appurtenant to Lot 5 of a subdivision of 52 acres across which the railroad ran. After long controversy it was on May 16, 1932, decided in a test case that the lots of the subdivision platted and described as adjoining the railway right of way extended to the center of the right of way. Rio Bravo Oil Co. v. Weed et al., 121 Tex. 427; 50 S.W.2d 1080, 85 A.L.R. 391. Lot 6 which is next to Lot 5 on the plat was involved in the Weed case. Federal Crude Oil Company acquired title to Lots 5 and 7 in 1901 and drilled a dry hole on Lot 5, exhausting itself and, as was then thought, the possibilities of the property. It failed to pay its franchise taxes, and its right to do business and to sue and be sued was suspended and its officers became scattered. In 1907 a stockholder, Guilmartin, sought a receivership in a State court and a disposition of the Federal's lands, naming the Company as defendant and serving process on one thought to be its vice-president, but who it is now said was not such. Without contest a receiver was appointed and by a sale confirmed by the court the Company's lands including Lot 5 were sold for $50 to Guilmartin. Yount-Lee Oil Company holds record title under Guilmartin to Lot 5. Oil having been struck in the vicinity at a greater depth than that of the former drillings, in 1919 one Fagin, joined by others who were stockholders of Federal and a majority of its directors, sought in the State court as stockholders and directors and trustees of Federal to cancel the Guilmartin title held by Yount and others and succeeded in the lower court, but the decree was reversed in the Court of Civil Appeals and it was adjudged that Fagin and his associates could not recover "in any capacity in which they had sued as plaintiffs." Yount v. Fagin, 244 S.W. 1036. In 1926, Yount-Lee Oil Company having produced oil on Lot 5, Fagin and others entered the federal courts seeking a declaration of title in Federal, but were held barred by the judgment in their suit in the State court. Fagin v. Quinn, 5 Cir., 24 F.2d 42. In 1928 the delinquent taxes of Federal were paid up, it resumed corporate activity, and entered the State court

suing in trespass to try title for Lot 5 held by Yount-Lee Oil Company, and Lot 7 held by one Quinn. The defendants made denials, pleaded the former litigations as conclusive on Federal, and Yount-Lee Oil Company also pleaded a title by limitation arising out of adverse possession of Lot 5. It was shown that it and its predecessors by tenants had used this lot for storing oil for many years before the well was drilled on it. The jury made a special verdict sustaining the limitation title and judgment on the whole case was given Sept. 11, 1933, that plaintiff take nothing. The case was affirmed by the Court of Civil Appeals, Federal Crude Oil Co. v. Yount-Lee Oil Co., 73 S.W.2d 969, and both the State and United States Supreme Courts refused to interfere. Federal then made effort in the State District Court to attack the judgment for fraud and on other grounds, but the Court of Civil Appeals in 1936 prohibited it. 92 S.W.2d 493. Then the present suit, which had been pending since 1933, was brought to trial. It ignores the litigation about Lot 5 to which Federal Crude Oil Company was a party, and seeks to raise a federal question by alleging that this right-of-way land, claimed by Yount-Lee Oil Company under the Guilmartin receivership title and under the judgments against Fagin and other stockholders, still belongs to Federal because the proceedings last mentioned did not afford Federal due process of law under the Fourteenth Amendment, U.S.C. A. Const., since it was not served in the one and not even named a party in the others; and since the Railway Company, as decided in the Weed case, supra, had only a right of way easement it had no title to the oil taken by Rio Bravo Oil Company, and an account of the oil is asked. The defense is that the Guilmartin title is good and has been repeatedly so adjudged, and especially that Federal is estopped by the judgment against it rendered Sept. 11, 1933, in favor of Yount-Lee Oil Company both on its record title and its limitation title. Federal replies that only that part of Lot 5 outside the right of way with the oil taken from it was there involved, and not the right-of-way land here in dispute with the oil taken from it. We do not state in detail the contentions about the other judgments, because we think it unnecessary to decide them, and by consequence not necessary to decide the federal question because of which jurisdiction in the District Court was invoked.

■ Federal Crude Oil Company on April 17, 1901, acquired title to Lot 5 by a deed referring to the partition deed and recorded plat which created the lots, and for reasons stated authoritatively in Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391, it took title to the right-of-way land in dispute as a part of it. A deed describing land as adjoining a road or street or non-navigable stream or railroad right of way, or by a reference to a plat so showing it, carries title to the center of the road or street or stream or right of way if the grantor owns the land on each side, subject to the easements, unless a contrary intention clearly appears. Cities Service Oil Co. v. Dunlap, 5 Cir., 100 F.2d 294. No one disputes that all the deeds made to Lot 5 thus carried title to the center of the right of way if they carried any at all. Now when Federal Crude Oil Company in 1928 sued Yount-Lee Oil Company for the possession and title of Lot 5 it described the land sued for thus: "Situated in Jefferson County, Texas, and being a part of the John Douthitt survey, and being the same tract and parcel of land acquired by the plaintiff on or about the 17th day of April, 1901, and recorded in the Deed Records of Jefferson County, Texas, Vol. 45, p. 125, which land is particularly described and known as 13.8 acres of land out of said John Douthitt survey in Jefferson County, Texas, and designated as Lots Numbers 5 and 7 out of the Charles J. Saison 52 acre tract off the northeast end of the John Douthitt survey. Said land being more fully and particularly described in the deed to Federal Crude Oil Co., dated April 17, 1901, recorded Vol. 45, page 125, of said Deed Records, to which reference is made for greater particularity of description." The judgment rendered Sept. 11, 1933, describes the land in the same words. We think there can be no doubt that all the land conveyed to Federal Crude Oil Company by its deed of April 17, 1901, and held by Yount-Lee Oil Company under Guilmartin by a description which refers in the same way to Federal's deed of April 17, 1901, was sued for and lost. If Federal had won, Yount could not have claimed that the right-of-way land was not recovered, nor can Federal now deny that it was lost. All that Federal acquired by its deed of April 17,

1901, it lost by this suit for land described by referring to that deed and its description.

It is argued that a voluntary conveyance was construed in the Weed case and the presumed intention of the grantor was the ground of the decision, and that the principle can have no application to a judgment which acts in invitum. The distinction does not hold. The plaintiff in describing the land he sued for, the title to which he was submitting to the judgment of the court, had an intention expressed by his words; and if those words in a deed would show an intention to include land under a railroad right of way they would ordinarily have the same meaning in the suit and the resulting judgment. All the land conveyed as Lot 5 by the deed of April 17, 1901, was sued for, since the reference is to that very deed for the full description. The plaintiff was claiming the whole of Lot 5, and the defendant also was claiming all of it under deeds similarly worded.

But it is said that the judgment shows the jury passed only on a limitation title by adverse possession in the defendant, and that the possession of the defendant Yount-Lee Oil Company could not have included the right-of-way land because that was at all times in the possession of the Railway Company. Neither assertion is correct. The title by limitation was one of several set up by Yount-Lee Oil Co. The evidence seems to have been undisputed except as to the adverse possession. Special interrogatories as to that were submitted to a jury which, with the jury's answers, are recited in the judgment, "and the Court having considered the evidence and said verdict of the jury" it was adjudged and decreed that the plaintiff take nothing. The court evidently considered the evidence as well as the jury's answers, and the judgment included Lot 7 to which the verdict did not apply at all. The appellate court discussed the limitation title which related to Lot 5 only, and the record title which applied to Lots 5 and 7, and sustained both titles. In the later application for the writ of prohibition the same court, reviewing its work as to the point now under discussion, said that in its former judgment it had upheld both of Yount-Lee's titles to Lot 5. After pointing out that Quinn's title to Lot 7 rested wholly on the Guilmartin title the court says: "Yount Lee Oil Company's title was likewise de-raigned under the receiver's deed to Guilmartin. It is therefore obvious that we held in effect that Yount-Lee Oil Company, like Quinn, was entitled to judgment as a matter of law on its record title irrespective of the issue of limitation."

But if we suppose that the limitation title only was adjudged, that title operated as to the whole of Lot 5, including the part under the right of way. Yount-Lee Oil Company was in actual possession of Lot 5 except the railroad right of way, claiming under deeds that covered the whole of Lot 5. The law extends the effect of the possession to the whole of the tract described in the deed, unless another claimant is also in possession of a part of it, in which case the title by possession is confined to the possessio pedis. Houston Oil Co. v. Goodrich, 5 Cir., 213 F. 136; 2 C.J.S., Adverse Possession, § 183 and Texas cases cited. Indorsing this doctrine, Federal argues that the Railway Company was in possession of the right of way and that as respects the minerals under it this was the possession of the true original owner. We think otherwise. The Railway Company does not possess its right of way as a tenant of the owner of the land. Its possession, so far as it may be properly termed a possession, is in its own right. It is only exercising its own easement. It has no duty and no concern touching the servient estate which may pass from hand to hand without affecting the easement. The exercise of the right-of-way easement may prevent a stranger from having adverse possession of the very land it covers (see 2 C.J.S., Adverse Possession, § 51), but will not control the legal effect of the adverse possession of the remainder of the tract. Nor is the case like that in which one person owns the surface rights of land and another the minerals, where the possession of the surface has been held not to affect the owner of the minerals. There is here no ownership of minerals separate from the land, but only an easement of right of way incumbering part of the land. On a question of title by adverse possession of the entire servient tract the easement is disregarded. If such a title is acquired or adjudged we are persuaded that the part of the land dominated by the easement is not excepted. If this were the law such title to a farm would not include the land under the highways and railroads which cross it, or such title to city lots would not include the land under the ad-

joining streets. We are referred to no case maintaining such a result.

 The res which was adjudged Sept. 11, 1933, as between Federal Crude Oil Company and Yount-Lee Oil Company was the title to Lot 5 and the whole of it. Both parties were bound to present all the forms and sources of title they had, and all were concluded by the judgment. The small tract described in the present bill is not a separate tract which was excepted from the former suit. It was, under the description used, a part of the land sued for whose title was adjudged. The oil which Rio Bravo Oil Company took out was not expressly included in the former case, but it was taken under an arrangement with Yount-Lee Oil Company, and payment was made to that Company after it won. Rio Bravo Oil Company is so far a privy of Yount-Lee Oil Company as to be protected by the former judgment establishing the title of Yount-Lee Oil Company.

The judgment is affirmed.