## RICHARDSON v. HART.

### No. 6125.

Court of Civil Appeals of Texas. Texarkana. July 12, 1944.

Rehearing Denied Oct. 5, 1944.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Clark, Craik, Burns & Weddell, of Fort Worth, for appellee.

HALL, Chief Justice.

This suit, brought by appellee against appellant, involves the construction of a mineral deed conveying a fractional interest in the minerals in and under a 10-acre tract of land in Rusk County. Omitting the field note description, the mineral deed reads:

"The State of Texas } Know All Men By
"County of Rusk      }      These Presents:

"That I, W. J. Gamble, of Rusk County, Texas, for and in consideration of the sum of Ten & No/100 ($10.00) cash in hand paid by W. A. Mulkey hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed assigned and delivered and by these presents do grant, sell convey assign and deliver unto the said Grantee an undivided 1/16th of 1/8th interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Rusk County, Texas, to-wit: * * *

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of C. M. Joiner, Trustee, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 1/16th of 1/8th of all of the oil royalty, and gas rental or royalty due and to be paid under 'the terms of said lease.

"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event none of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee, he owning 1/16th of 1/8th of all oil, gas and other minerals in and under said lands, together with no interest in all future rents.

"To Have And To Hold the above described property, together with all and

singular the rights and appurtenances thereto in anywise belonging unto the said Grantee herein, his heirs and assigns forever; and I do hereby bind myself, heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Grantee herein his heirs, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand this the 31st day of March, 1931.

"W. J. Gamble."

Trial before the court without a jury resulted in judgment for appellee for 1/128 of all the minerals in and under said 10-acre tract.

It is appellant's contention that under the terms of the mineral deed appellee was entitled to recover only a 1/1024 of the entire mineral estate. Appellant's claim is by inheritance from her deceased father and mother, Mr. and Mrs. W. J. Gamble. Appellee claims through W. A. Mulkey. The proper construction of the mineral deed from Gamble to Mulkey, copied above, constitutes the sole question here. In construing this mineral deed we must determine the true intention of the parties to it as respects the amount of minerals conveyed. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391. It is also a rule of construction applicable here that a deed will be construed strongest against the grantor and not against the grantee, "as passing the greatest estate possible." Clemmens v. Kennedy, Tex.Civ.App., 68 S.W.2d 321, 323, writ refused. In two places in the instrument above set out the interest conveyed is designated as 1/16 of 1/8 "of all oil, gas and other minerals in and under said land." In one paragraph the mineral interest conveyed is referred to as 1/16 of 1/8 "of all the oil royalty * * *" In such circumstances, it is highly important to determine from the record what interpretation the parties thereto and their predecessors in title gave to the terms of the grant. In 1933 Mrs. M. B. Gamble, widow of W. J. Gamble and from whom appellant inherited her interest, executed a division order to the Beacon Oil & Refining Company in which her interest in the minerals in this land is stated to be 1/8 overriding royalty. In February, 1935, Mrs. Gamble executed a mineral deed to H. C. Miller in which it is stated that a previous assignment of a 1/128 mineral interest had been made to W. A. Mulkey, appellee's grantor. On January 1, 1938, appellant executed a division order to the Pine Pipe Line Corporation in which her mineral interest in the land is stated to be .109375, the equivalent of 1/8 overriding royalty. On December 4, 1941, appellant wrote a letter to H. E. Pelton, agent of appellee, in which she stated that she owned an overriding royalty in the tract of land. In addition to the statements detailed above, the several oil companies purchasing oil from this tract of land have, since 1934, the date of the assignment from Mulkey to appellee, and until 1941, been paying to appellee and appellant for oil runs on the basis of 1/128 of all the oil produced from said tract of land. Thus it clearly appears that the parties to said mineral deed, long before any controversy arose, interpreted same as conveying a 1/128 of all the oil produced from said land. And not until an attorney for one of the pipe line companies construed the mineral deed as conveying only a 1/1024 mineral interest and had stopped all oil payments, was the contention advanced that the mineral deed conveyed only a 1/1024 interest instead of a 1/128 interest. In Rio Bravo Oil Co. v. Weed, supra [121 Tex. 427, 50 S.W.2d 1088, 85 A.L.R. 391], it is said: "It is a familiar rule of construction of written instruments that, where a contract is ambiguous in its terms, a practical and reasonable construction given it by the parties thereto, before any controversy has arisen as to its meaning, will generally be given controlling effect by the courts." In Cavazos v. Trevino, 6 Wall. 773, 785, 18 L.Ed. 813, 815, it is held: "The practical interpretation which the parties, by their conduct, have given to a written instrument in cases like this, is always admitted, and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission. Safer testimony can hardly be presented in relation to any transaction occurring in human affairs." In Texas & N. O. R. Co. v. Orange County, Tex.Civ.App., 206 S.W. 539, 544, writ refused, it is said:

"There is another rule of construction that might be applicable here if it were necessary to invoke its application, which is that where the parties to an instrument in writing have by their acts and conduct placed a construction upon the same, showing the intention of the parties executing

the same, then such acts and conduct should be given strong weight by the courts in arriving at the intention of the parties in the execution of the instrument, and, in the absence of clear language in such instrument indicating an intention to the contrary of the parties as expressed by their acts and conduct, the courts should adopt the construction of such instrument as placed upon it by the parties thereto."

See also Murphy v. Jamison, Tex.Civ. App., 117 S.W.2d 127, writ refused; Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ.App., 160 S.W.2d 92, writ refused; Security Development Co. v. Hidalgo County Drainage Dist. No. 1, Tex. Civ.App., 124 S.W.2d 178.

Taking into consideration the terms of the mineral deed itself, together with the particular construction given it by the parties before this litigation arose, we have concluded that the judgment of the trial court was correct in awarding to appellee a 1/128th interest in all the minerals in and under the land described therein.

The judgment of the trial court is affirmed.