**RIO BRAVO OIL CO. et al. v. WEED et al.**
**(No. 1514.)\***

Court of Civil Appeals of Texas. Beaumont.
Nov. 16, 1927.

Rehearing Denied Nov. 30, 1927.

**1. Partition** �köm8—**Partition deed, by its terms, held to divide entire tract of land, including railroad right of way running through same.**

Partition deed between parties who each owned undivided half of tract which partitioned and divided land in accordance with plat attached to deed, wherein one party conveyed certain lots to the other, who conveyed other lots to him, *held* by its terms, which were clear and unambiguous, to partition and divide entire 52 acres included in tract, including railroad right of way running through same, so that acreage of right of way was included as part of several lots abutting on right of way.

**2. Partition** ⊂m8—**Plat attached to partition deed dividing entire tract, including railroad right of way, could not contradict plain terms of deed.**

Plat on which lines dividing tract into lots ran only to railroad right of way through tract, which plat was attached to partition deed which by its terms divided entire tract of land, including right of way, could not contradict plain and unambiguous terms of deed.

**3. Partition** ⊂m8—**Deed conveying lot, by number, facing railroad right of way included fee of right of way to center and attempt to more fully describe same by metes and bounds did not take away from first description.**

Partition deed conveying southeast half of lot 6 facing railroad right of way included part of fee of right of way to center that attached to southeast half of said lot, and attempt of

drawer of deed to more fully describe lot by metes and bounds calling for outside right of way line as boundary did not add to nor take away from first description in deed wherein land was described by lot number.

**4. Boundaries** ⊂m3(8)—**Where land is described as subdivision according to map of block on file and also by metes and bounds, former description prevails.**

Where land is described as subdivision according to map of the block on file and also by metes and bounds, former description will prevail if there be conflict.

**5. Deeds** ⊂m111—**Where deed contains two descriptions of land between which there is inconsistency, description which whole instrument shows best expresses parties' intention controls.**

Where deed contains two descriptions of land conveyed, between which there is repugnancy or inconsistency, that description which whole instrument shows best expresses intention of parties must control.

**6. Deeds** ⊂m93—**Intention of parties, when found controls in construing deed.**

Cardinal rule in construing deed is to search for intention of parties, and, when that is found, it controls.

**7. Partition** ⊂m8—**Deed by grantor owning undivided half of tract, conveying undivided half, and subsequent deed after partition showed intention to convey one-fourth of tract.**

Where H., who owned undivided half in 52-acre tract, conveyed undivided half of his share to W., and later H. and his co-owner divided land by partition deed, with W.'s consent, and H. thereafter conveyed to W. an undivided half of certain lots and the specific southeast half of certain lot, deeds showed intention of parties that deed should convey to W. one-fourth of the 52 acres.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by James F. Weed and another against the Rio Bravo Oil Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood and John T. Garrison, all of Houston, and W. D. Gordon and Chas. D. Smith, both of Beaumont, for appellants.

D. Edward Greer, John E. Green, Jr., and P. O. Settle, all of Houston, and Orgain & Carroll, of Beaumont, for appellees.

O'QUINN, J. This is a suit by appellees James F. Weed and the Gulf Production Company against appellants Rio Bravo Oil Company, Texas & New Orleans Railroad Company, J. M. Hebert, Marrs McLean, and the Chaison heirs to recover title to and to enjoin appellants from producing oil on forty-three one-hundredths of an acre of land, described as follows:

⊂mFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 22, 1928.

"That certain tract and parcel of land in Jefferson county, Tex., in the John Douthitt 152-acre survey, more particularly described as follows, to wit: ·

"Beginning at the point where the southeastern boundary of the John Douthitt survey of 152 acres in Jefferson county crosses the center of the Texas & New Orleans Railroad main line track (formerly the Sabine & East Texas Railroad main line track);

"Thence south 45 degrees west with the said Douthitt southeastern line 104.7 feet to the western boundary of said railroad right of way;

"Thence north 27 degrees 40 minutes west 195.3 feet with the line of said right of way;

"Thence north 45 degrees east 104.7 feet to the center of said railroad track;

"Thence south 27 degrees 40 minutes east 195.3 feet to the place of beginning:

"Containing forty-three hundredths of an acre of land, more or less, and being a part of lot 6 as shown on plat attached to that certain partition deed dated April 13, 1901, and filed for record in Jefferson county, Tex., April 13, 1901, and recorded in volume 38, page 427, of the Deed Records of Jefferson county, Tex."

Weed claimed to be the owner in fee of the land, and the Gulf Production Company claimed to be the lessee under Weed of all oil, gas, and other minerals in and under the land. The Texas & New Orleans Railroad Company was alleged to have an easement on and over the land for use as a right of way for railroad purposes only. Appellees also sought an injunction restraining appellants from drilling for oil or gas, and from using the land in any manner inconsistent with or not incident to the use of same as a right of way for railroad purposes. They also alleged, in addition to their being fee-simple owners of the land in controversy, that they were owners of lands adjoining said right of way, and that appellants were drilling oil and gas wells on the land in controversy within the railroad right of way, which would have the effect of draining the oil and gas from under the lands of appellees adjoining the right of way, and that if said drilling operations were not restrained, they would suffer irreparable injury. A temporary injunction was granted, but afterwards the parties entered into an agreement by which the injunction was dissolved and appellants permitted to continue operations on the land.

Appellants answered by general demurrer, general denial, and plea of not guilty. .

The case was tried to the court without a jury and judgment rendered in favor of appellees for the land, subject to the easement for right of way purposes, and enjoining the appellants from producing oil therefrom. The case is before us on appeal.

The land in controversy is a part of the John Douthitt 152-acre survey, and lies within the right of way of the Texas & New Orleans Railroad Company, which passes through said Douthitt 152-acre tract. Said survey was patented to John Douthitt April 23, 1867. This survey was owned, through a regular chain of title, by Martha D. Janes in 1881, when she conveyed the above-mentioned railroad right of way. Title to the 152-acre tract passed regularly from Martha D. Janes to Jef Chaison and J. M. Hebert, including the land in the railroad right of way. Chaison and Hebert sold 100 acres off of the southwest portion of the tract, leaving a balance of 52 acres, over and across which the railroad right of way extended. The right of way was 200 feet wide and contained 3.32 acres of land. Chaison died leaving several heirs.

April 9, 1901, J. M. Hebert conveyed to James F. Weed:

"The undivided half of my undivided half of, in and to all that certain (52) fifty-two acres of land being the northeast end in the John Douthitt survey in the said Jefferson county, Texas, about four miles south of Beaumont, and more particularly described as follows, to wit:" *Describing the said 52 acres by metes and bounds, no mention being made of the railroad right of way.*

April 13, 1901, J. M. Hebert, on the one part, and the Chaison heirs, on the other part, with the consent of James F. Weed, by partition deed partitioned and divided the said 52 acres of land in accordance with a plat attached to said deed, wherein the Chaisons conveyed to J. M. Hebert "as his share of said land" lots 2, 4, 6, and 8, to be held by him in severalty "as his share of said 52 acres," and J. M. Hebert conveyed to the Chaisons "as their share of said 52 acres of land" lots 1, 3, 5, and 7. The lots numbering 1 to 8 were delineated upon said plat or map of the 52 acres so partitioned and subdivided, together with the acreage of each lot. The railroad right of way was also shown on said plat. This deed and plat were filed for record April 17, 1901.

April 17, 1901, J. M. Hebert conveyed to James F. Weed an undivided one-half of lots 2, 4, and 8, and the southeast half of lot 6. This deed was recorded April 18, 1901.

By deed dated July 9, 1902, the Chaisons conveyed their interest in the said 52 acres to the Jef Chaison Town Site Company. This conveyance was by lot number only.

May 19, 1926, the Texas & New Orleans Railroad Company leased to Marrs McLean that portion of its right of way extending through the Douthitt survey.

January 12, 1926, J. M. Hebert and the Jef Chaison Town Site Company leased to Marrs McLean the 200-foot right of way extending through the Douthitt survey.

The heirs of Jef Chaison, for a consideration of $52, executed what is termed "ratification" leases to Marrs McLean covering the right of way through the Douthitt survey. These leases were in ratification of and adoption of the lease executed by the Jef Chaison Town Site Company.

June 19, 1926, Marrs McLean assigned to the Rio Bravo Oil Company his leases covering the railroad right of way.

The above statement is sufficient to show that upon which the parties base their claim of title to the land in controversy. Each contends that a proper construction of the partition deed of date April 13, 1901, between J. M. Hebert and the Chaisons partitioning the 52 acres held by them in common determines the rights of the parties.

Appellants say:

"The propositions relied upon by the appellants as showing that appellees have no interest in the land in dispute are these:

"(1) That as the deeds under which they claim show without dispute on their face that they do not include the land in controversy, or any interest therein, it affirmatively appears that they do not own any interest in said strip of land, *unless by 'presumption of law'* said deeds are given the effect of including the land in controversy or any interest therein; and that here such presumption is precluded.

"(2) That by the partition deed of April 13, 1901, between J. M. Hebert and the Chaison heirs, and the plat attached thereto, the right of way of the Texas & New Orleans Railroad Company *was not* partitioned, and no part of same was included in lot 6 of the partition, but that title to said right of way remained in said Hebert and the Chaison heirs, as tenants in common, subject to right of way privileges in favor of the railroad company."

In reply to the above propositions, appellees say:

"When two parties, as Hebert and the Chaisons, under an express agreement to partition a particular 52 acres, no more, no less, of land, convey to each other on a plat prepared for that purpose, the same number of lots, the same usable acreage, and the same frontage on a right of way, which constitutes a part of the 52 acres, each grantee takes to the center of the way because that effectuates their purpose. There is no room left for an inference— if an inference were permissible without an express reservation—that they intended to retain in common title to any part of the 52 acres, because that would be contrary to their expressed purpose.

"Where two parties, as Hebert and the Chaisons, own in common exactly 52 acres of land, subject only to a right of way across it, the share of each therein being exactly 26 acres, agree to partition the 52 acres and in pursuance of such agreement convey to each other in severalty 'his' or 'their share of said 52 acres of land,' it is mathematically certain the fee in the right of way was included in the division."

The partition deed reads:

"State of Texas, Jefferson County.

"Know all men by these presents: That we, Chas. J. Chaison, of Jefferson county, Tex., individually and Clara Chaison, W. G. Chaison, Lizzie Chaison, and Jennie Chaison, acting herein by and through L. I. Parminter, and Chas. J. Chaison, our agents and attorneys in fact, and also, Lizzie Chaison, L. I. Parminter, and Marvin Scurlock, executors of the last will and testament of Hallie C. Russell, deceased, and also J. M. Hebert, for and in consideration of executing a partition between J. M. Hebert, on the one hand, and the said Chas. J. Chaison, Clara Chaison, W. G. Chaison, Lizzie Chaison, and Jennie Chaison, and the said executors of Hallie C. Russell, on the other hand, have agreed to the following partition of a part of the John Douthitt survey of land situated in Jefferson county, Tex., it being 52 acres off the northeast part or end of said survey, situated about 4½ miles south of said city of Beaumont, said 52 acres and the subdivision thereof being fully shown and described by the hereto attached plat, which is marked Exhibit X and made a part of this deed. That is to say, the said Chas. J. Chaison and said Clara Chaison, W. G. Chaison, Lizzie Chaison, and Jennie Chaison, acting by and through their agents and attorneys in fact, L. I. Parminter and Chas. J. Chaison, and the said executors of the estate of Hallie C. Russell, deceased, hereby release and relinquish unto said J. M. Hebert as his share of said land to be held by him in severalty, lots and blocks 2 and 4, as shown by said plat, containing 5.27 acres each. Also lots or blocks 6 and 8, as shown by said plat containing 6.9 acres each.

"To have and to hold unto the said J. M. Hebert in severalty as his share of said 52 acres, and the said J. M. Hebert hereby releases and relinquishes unto said Chas. J. Chaison, W. G. Chaison, Clara Chaison, Jennie Chaison, Lizzie Chaison, and the said Lizzie Chaison, L. I. Parminter, and Marvin Scurlock, as executors as aforesaid, the following lots or blocks, as shown by said plat which is attached hereto, each being a part of said 52 acres of said John Douthitt survey, to wit:

"Lots or blocks 1 and 3 of 5.27 acres each. Also lots and blocks 5 and 7 of 6.9 acres each.

"To have and to hold unto the said Chas. J. Chaison, Clara Chaison, Lizzie Chaison, Jennie Chaison, L. I. Parminter, and Marvin Scurlock, executors as aforesaid, in severalty as their share of said 52 acres of land.

"Witness our signatures on this the 13th day of April, 1901.".

[1] After repeated and careful consideration, we have concluded that it must be held that the partition deed did partition and divide the entire 52 acres of land, including the railroad right of way, and that lot 6 conveyed to Hebert therein did include the land in controversy. We think this conclusion is compelled from a consideration of the deed itself. Its terms are clear and unambiguous. The only purpose for the execution of the deed was to partition the 52 acres of land owned by them in common. They say so, and they further say that the consideration supporting the deed was the partitioning between them of the 52 acres, and clearly state that the land was divided into 8 lots or blocks, and that Hebert was to and did receive lots 2, 4, 6, and 8, which were to be held by him in severalty "as his share of said 52 acres," and that the Chaisons were to and did receive lots 1, 3, 5, and 7, to be held by them in severalty "as their share of said 52 acres of land." There is no hint of any agreement or intention of the parties that the 3.32 acres included within the right of way was not included

in the partition, or that it was to remain possessed by the parties in common. To the contrary, we think it too clear for cavil that the very purpose and intention of the parties was to end the common ownership, and that each should have and hold his part of the whole 52 acres in severalty. They owned 52 acres; they say they were partitioning 52 acres, not 52 acres less 3.32, or 48.68 acres; they executed a conveyance to each other, declaring that the lots conveyed to each constituted the amount that each was entitled to own and hold in severalty of the 52 acres "as his share of said 52 acres." Manifestly, the parties did as they declared to be their purpose—divided the whole 52 acres between them, for to hold otherwise would be to read out of the deed the plain statement of the parties that they had agreed to partition the 52 acres. The deed says that J. M. Hebert was to receive the even numbered lots—2, 4, 6, and 8—as his share of the 52 acres, and that the Chaisons were to receive the odd numbered lots—1, 3, 5, and 7—as their share of said 52 acres. The 52 acres included the right of way. If, as the deed solemnly declares, these lots contained the "share of said 52 acres" that was allotted to each of the respective parties, how can it be said that the right of way was not divided, for, in order to receive their "share of said 52 acres," each party must receive his half of the undivided land covered by the right of way. The terms of the deed being clear and unambiguous, it is not for us to say that they did not mean what they said when they declared that they had agreed to partition between them the 52 acres, or that they did not do what they declared they were doing, dividing the whole 52 acres.

But appellants say that the map or plat of the 52 acres, attached to the partition deed made by the parties showing how they had divided the land, shows that the right of way was not divided, because the plat shows that the right of way is not contained in either of the lots or blocks into which they had divided the land, but to the contrary. They say:

"We think the plat attached to the partition deed, when considered carefully, unmistakably shows on its face as a matter of law that the parties did not intend to partition the right of way, and that under no theory of construction can it be given the effect of partitioning the same. That lots 3, 4, 5, and 6 did not include any part of the right of way within the *actual boundaries* is too apparent to require discussion. The right of way lines as the boundaries of these lots are clearly delineated, and the subdivision lines stop at the outside lines of the right of way. The length of the different lines also shows that distance was calculated only to the exterior right of way lines. It is also undisputed that the acreage given to each lot is the acreage included in the actual boundaries. It is also to be further noted that the acreage of the right of way itself, considered as a separate lot or portion is given on the plat, as well as its boundary lines. So it

is at once obvious that these lots adjoining the right of way did not include and were not intended to include any part of the right of way, unless they are made to include same by reason of some *rule of construction* or *presumption of law.*"

The following is a copy of the plat attached to said partition deed. We have indicated the land in controversy.

[2] We do not believe appellants' contention to be sound. To so hold would be to give greater force and effect to a mere exhibit attached to an instrument than to the instrument itself, and to permit the exhibit to contradict the plain and unambiguous terms of the instrument. The fee to the right of way was a part of the 52 acres. The parties agreed to partition the 52 acres, and the deed was executed to carry out this agreement. The parties in the partitioning, in order that each might have his just and equal portion of the 52 acres, platted the 52 acres into eight lots or blocks, having in view the acreage and situation of the lots or blocks to be given to each party. Four of the lots bordered on the right of way, two odd numbered and two even numbered. There was an equal portion of the right of way fronting or bordering on each lot. We think it manifest that in subdividing the 52 acres into eight lots or blocks, and the delineating of same upon the plat, the lines of the lots or blocks facing the right of way were made to stop at the edge of the right of way to show the amount of usable land in each of said lots or blocks, and not for the purpose of excluding the right of way from the partitioning. For the parties to carry out their plainly expressed purpose to divide the 52 acres, and the dividing of same into eight lots or blocks, "the subdivision thereof being fully shown and described by the hereto attached plat," as they said, the lots or blocks on either side of the right of way must of necessity, and as a matter of law, extend to the railroad track, the middle of the right of way, and embrace the whole of same. We think this is further apparent, when we consider the fact that the parties declared without reservation or exception, that they purposed to partition a tract of 52 acres. Each party owned one-half—26 acres. Hence in the partitioning he must receive 26 acres. The tract was divided into eight lots or blocks. The total acreage of the different lots or blocks as shown by the plat, excluding the right of way, is 48.68 acres. If this acreage only was partitioned, then the parties did not receive the acreage to which they were entitled, and same did not constitute their "share of said 52 acres," which is contrary to their expressed intention. It follows that if the parties each received "his share of said 52 acres," as is declared in the deed they did, the acreage of the right of way was included as a part of the several lots fronting on the right of way. This comports with the expressed purpose and intention to divide the whole 52 acres, and gives to each party his one-half, or 26 acres.

We think that the construction placed by us on the partition deed is that given it by Hebert and the Chaisons in their subsequent dealings with the 52-acre tract. The Chaisons, by deed of April 17, 1901, only four days after the partitioning had been had, conveyed to H. L. Fagin lots or blocks 5 and 7 of the 52-acre tract, the description being:

"Out of a tract of 52 acres off of the N. E. end of the John Douthitt survey of 152 acres in said county, which said 52-acre tract was previously owned by us in common with J. M. Hebert, but which was recently partitioned between us and said Hebert," etc.

By deed dated July 9, 1902, the Chaisons conveyed their interest in said 52 acres to the Jef Chaison Town Site Company. This conveyance was by lot number only.

In an agreed judgment rendered in the district court of Jefferson county, Tex., May 25, 1903, in the case of John Douthitt et al. v. Chas. J. Chaison et al., wherein the 52 acres of the Douthitt survey were involved, Hebert and the Chaisons recovered, Hebert having judgment for lots 2, 4, 6, and 8, and the Chaisons having judgment for lots 1, 3, 5, and 7, "according to the plat of the subdivision of the 52 acres of land out of the northeastern end of the John Douthitt survey in Jefferson county."

In the case of Thomas Anderson v. A. F. Lucas et al., rendered in the district court of Jefferson county, April 25, 1906, in which case J. M. Hebert and the Chaisons were interested as defendants, and where there was in issue a claimed conflict between the Douthitt survey and the Humphries survey, and which claimed conflict involved the 52 acres of which the land herein in controversy is a part, there was an agreed judgment for defendants Hebert and the Chaisons for the 52 acres, describing it by lot Nos. 1 to 8, and referring to the partition deed here involved for a better description, and continuing:

"And said blocks together constitute 52 acres of said Douthitt survey, which was partitioned between said parties by deed dated April 13, 1901."

So it appears that Hebert and the Chaisons in their subsequent dealings with said 52 acres, both in conveying to others and in taking title by judgment for themselves, treated the 52 acres as having been partitioned without reservation or exception.

Appellants assert that the court erred in construing the deed from J. M. Hebert to James F. Weed, of date April 17, 1901, under which appellees claim, and in holding that said deed conveyed the fee title to the center of the Texas & New Orleans Railroad track (the middle of the right of way) because:

(a) Said deed expressly confined the land conveyed to the exterior and outside line of the right of way, and because the general rule with reference to presumption to convey to the center of a street or highway has no application to a railroad right of way; and

(b) The deed contains specific description of the land conveyed which clearly confines the land conveyed to the western and outside

line of the right of way by specific calls for course and distance and specific designation of the outside right of way line as the east boundary of the land conveyed, and specially limiting the land conveyed to 3.45 acres, which specific description excludes any presumption or inference of an intention to convey land to the middle of the right of way, even if the general rule or presumption applicable to streets and highways was applicable to railroad right of ways.

These contentions cannot be sustained. By deed of April 9, 1901, Hebert conveyed to Weed an undivided one-half of his undivided half of the 52 acres, describing the said 52 acres by metes and bounds, no mention being made of the right of way. April 13, 1901, with the consent of Weed, said Hebert and the Chaisons partitioned the 52 acres, executing the partition deed involved herein. April 17, 1901, Hebert, in ratification of his deed to Weed of date April 9, 1901, executed to Weed another deed conveying to him an undivided one-half of lots 2, 4, and 8, and specifically the southeast half of lot 6, the description of same reading:

"First. The southeast one-half of lot No. 6 of the subdivision of a tract of 52 acres of land off the north end of the said John Douthitt survey as shown by the plat attached to the deed of partition of said 52-acre tract of land between said J. M. Hebert and the estate of Jeff Chaison, dated 13th day of April, A. D. 1901, and filed for record in the county clerk's office in Jefferson county, Tex., on the 17th day of April, A. D. 1901, in which said partition lots No. 2, 4, 6, and 8 were allotted to me, the said J. M. Hebert; the said southeast half of the said lot No. 6 hereby conveyed is more particularly described as follows, to wit:

"Beginning at the east corner of said lot No. 6 on the west side of the Sabine & East Texas Railway right of way on the southwest side of the track, where the southeast line of said Douthitt survey crosses said right of way line, said point being 1,627.6 feet south 45° west from the east corner of said Douthitt survey;

"Thence south 45° west with said line 778 feet to the south corner of said tract No. 6 and the east corner of tract No. 7;

"Thence north 45° west with the dividing line of lots Nos. 6 and 7 186.2 feet to corner;

"Thence north 45° east 835.1 feet to the line of said railroad right of way;

"Thence S. 27° and 40' east 193.03 feet with said right of way line to the place of beginning, containing 3.45 acres of land."

[3] The insistence is that, as the deed described the half of lot 6 conveyed by metes and bounds, calling for the west outside right of way line as the east boundary of the half of lot 6, the portion of the right of way between said line and the middle of the right of way was not included in said conveyance, and therefore appellees have no title to same.

It will be observed that the deed contains two distinct descriptions of the property conveyed. The first and the more definite description is:

"The southeast one-half of lot No. 6 of the subdivision of a tract of 52 acres of land off the north end of the said John Douthitt survey, as shown by the plat attached to the deed of partition of said 52-acre tract of land between said J. M. Hebert and the estate of Jeff Chaison, dated 13th day of April, A. D. 1901."

The second and other description of the said southeast half of said lot No. 6 is by metes and bounds, as set out, supra. The first description given in the deed describing the land by lot number in reference to a plat will control over the description by metes and bounds, even if it should be conceded that the description of the southeast half of lot 6 by metes and bounds, standing alone, does not include any part of the right of way. We have held, supra, that the fee to the center of the right of way attached to the several lots facing the right of way, hence that facing lot 6 attached to lot 6 as a part thereof. Therefore, when the deed from Hebert to Weed conveyed the southeast half of lot 6, it necessarily included that part of the fee of the right of way that attached to the southeast half of said lot, and the attempt of the drawer of the deed to more fully describe said lot by metes and bounds did not add to nor take away from the first description in said deed, wherein the land was described by lot number.

[4-7] Where land is described as a subdivision according to a map of the block on file and also by metes and bounds, the former description will prevail, if there be a conflict. Devlin on Deeds, § 1038a; Arambula v. Sullivan, 80 Tex. 615, 16 S. W. 436; Moore v. Railway Co., 129 Minn. 237, 152 N. W. 405; Cook v. Hensler, 57 Wash. 392, 107 P. 178; 18 C. J. 284, § 254. Moreover, where a deed contains two descriptions of the land conveyed, but between which there is a repugnancy or inconsistency, that description which the whole instrument shows best expresses the intention of the parties must control. Devlin on Deeds, § 1038; 18 C. J. 284, § 254. The cardinal rule in construing a deed is to search for the intention of the parties, and when that is found it controls. There can be no question but that Hebert intended to convey to Weed one-half of his, Hebert's, undivided one-half of the 52 acres. He made him a deed to same on April 9, 1901, and then agreed that Hebert and the Chaisons might partition the 52 acres between them, and immediately after the partition deed was executed Hebert ratified his former conveyance of an undivided one-half of his undivided half of the 52 acres by executing to Weed a deed conveying to him as Weed's half of his, Hebert's, half of said 52 acres, an undivided half of lots 2, 4, and 8, and the specific southeast half of lot 6. So, it appears without dispute that it was the intention of Hebert and Weed that said deed should convey to Weed one-fourth of the 52 acres. This is giving effect to the intention

of the parties as manifested by the entire description as shown in both deeds executed by Hebert to Weed. 18 C. J. 290, § 263.

Appellants have cited the case of Couch v. Railway, 99 Tex. 464, 90 S. W. 860, as sustaining their contention. The partition deed in question is clear and unambiguous in its terms. It shows upon its face that it was the intention of the parties to divide a certain 52 acres of land; that they subdivided it into eight lots or blocks, and conveyed to each other four of said lots or blocks, the same to be held in severalty by each party, "as his share of said 52 acres of land." Under these facts, considered in the light of the circumstances surrounding the execution of the deed, the situation of the parties, and the object to be attained by the instrument, the holding in the Couch Case invoked by appellants has no application, but our holding is in accord with the holding in the concluding paragraph of the opinion in said case on subsequent appeal, reported in 49 Tex. Civ. App. 188, 107 S. W. 873, against which a writ of error was denied by the Supreme Court.

As the matters above discussed dispose of the case, the other questions presented become immaterial. The judgment should be affirmed, and it is so ordered.

Affirmed.