**MANN et al. v. RIO BRAVO OIL CO. et al.**

No. 2835.

Court of Civil Appeals of Texas.
Beaumont.

March 24, 1937.

Rehearing Denied July 7, 1937.

Burgess, Chrestman & Brundidge and Lloyd E. Elliott, all of Dallas, E. B. Votaw, of Beaumont, and C. A. Leddy and Fulbright, Crooker & Freeman, all of Houston, for appellants.

Duff & Cecil, of Beaumont, P. O. Settle, of Fort Worth, John E. Green, Jr., of Houston, and O. S. Parker, W. D. Gordon, E. E. Easterling, and Thos. J. Baten, all of Beaumont, for appellees.

O'QUINN, Justice.

November 1, 1881, Martha Janes was the owner of the Douthitt 152-acre survey of land in Jefferson county, Tex. On that date she conveyed to the Sabine & East Texas Railway Company, for railway purposes, a right of way 200 feet in width across the northeastern end of said survey. The Texas & New Orleans Railroad Company succeeded to the rights of the Sabine & East Texas Railway Company, and at all times herein involved has used said right of way for railway purposes.

March 4, 1884, by mesne conveyances, Jeff Chaison and J. M. Hebert became the owners of said 152 acre survey. December 14, 1894, Chaison and Hebert sold to the Gulf, Beaumont & Kansas City Railway Company 100 acres off of the southwestern end of said tract, leaving them the northeast 52 acres across which the said Texas & New Orleans Railroad right of way extended. Chaison died leaving surviving him a wife and several children. On April 13, 1901, in due conformance with law, the Chaisons and Hebert, by written deed, duly partitioned between them the said 52 acres (which partition included the 200-foot right of way, Rio Bravo Oil Co. v. Weed [Tex.Civ.App.] 300 S.W. 171), by dividing the 52 acres into eight lots or parcels numbered 1 to 8. Lots 3 and 4 on the one side, and lots 5 and 6 on the other (opposite) bordered on the railroad track. Lots 1, 3, 5, and 7 were allotted to the Chaisons, and lots 2, 4, 6, and 8 to Hebert. For delineation of the 52 acre tract, as divided into the eight lots, see plat in Rio Bravo Oil Co. v. Weed (Tex. Civ.App.) 300 S.W. 171.

On April 17, 1901, Hebert conveyed to James F. Weed an undivided half of lots 2, 4, and 8, and specifically the southeast half of lot 6. Lot 6 contained 6.9 acres, so after the sale of the southeast half of lot 6 to Weed, Hebert had 3.45 acres remaining in the northwest half of said lot.

On April 24, 1901, Hebert conveyed to the Trenton Rock Oil Company a portion of his northwest half of lot 6 off of the east end, described by metes and bounds and as "containing one acre of land." This acre did not border the railroad track, but called to border on the western line of said right of way, that is the northeasterly line of the one-acre tract coincides with the southwesterly line of the railroad right of way. In other words the one-acre tract was entirely west of the right of way, bordering on the western line of the right of way.

On March 25, 1902, J. M. Hebert sold the remainder of the northwest half of lot 6 to J. B. Treadwell, describing it as 2.45 acres and being all of the northwest half of lot 6 save and except the one acre previously sold by him to the Trenton Rock Oil Company, and describing the said one acre by the same metes and bounds as in the deed to said oil company, and referred to the plat attached to the partition deed between him and the Chaisons wherein they had partitioned the 52 acres for location of lot 6. The portion sold Treadwell is not involved in the instant suit. By mesne conveyances J. M. Nearen became the owner of this Trenton Rock Oil Company acre on July 7, 1908. It was his separate property. He died intestate on July 22, 1909, leaving his wife, Mrs. J. M. Nearen, the present Jeanette Mann, and W. S. Nearen, Hal Nearen, Ollie Nearen, Annie Nearen Thompson, and Ida Nearen Stone (his brother and sisters), hereinafter referred to as the "Nearens," surviving him as his heirs at law. On January 10, 1910, Mrs. J. M. Nearen (now Mrs. Jeanette Mann) conveyed the one acre of land to W. D. Gordon, describing it by metes and bounds as in the deed from J. M. Hebert to the Trenton Rock Oil Company, and on April 6, 1914, W. D. Gordon reconveyed

said acre of land to Mrs. J. M. Nearen by the same description.

April 27, 1917, Mrs. J. M. Nearen married Charles H. Mann, and in 1921, they moved to California. In the fall of 1925, oil was discovered near what was known as "Spindletop" in Jefferson county, and near this one acre of land, and on January 23, 1926, Mrs. Mann, joined by her husband, Charles H. Mann, executed and delivered to Thos. J. Baten an oil lease on said one acre of land, reserving a ⅛ royalty of all oil produced and saved from the leased premises. This lease after describing the one acre by metes and bounds as in the prior deeds conveying same, contained this provision: "being all of the lands, and it being lessors intention hereby to lease all of the lands, owned by lessor in said surveys or any of them." The lease specially provided that it could be assigned.

On April 14, 1926, Baten in writing assigned the lease to the Gulf Production Company, reserving to himself a ¹⁄₂₄ overriding royalty in the oil and gas produced.

The Rio Bravo Oil Company, asserting its right claimed by virtue of a lease to it by the Texas & New Orleans Railroad Company covering its right of way, took possession of the property here involved (⁴⁄₁₀ of an acre in the right of way) and was developing same, producing oil in large quantities.

On April 30, 1926, the Nearens brought suit in trespass to try title, No. 26612 in the Fifty-Eighth district court of Jefferson county, against the Manns, et al., for the "one acre of land" known as the Trenton Rock Oil Company acre, describing it as it was described in the several deeds of conveyance up to the deed from W. D. Gordon in his reconveyance heretofore mentioned to Mrs. Nearen, The Gulf Production Company answered that it claimed no interest in the land in controversy other than its lease rights under a lease from the Manns to Thos. J. Baten dated January 23, 1926, and which lease was assigned to it by said Baten, and prayed that if plaintiffs in the suit recovered, that the judgment ratify and confirm its said lease. Baten plead his overriding royalty interest and defendant King & Jackson plead the interest conveyed to them by the Nearens. June 11, 1926, an agreed judgment was entered in said cause awarding to Mrs. Mann one-half of the land in controversy, and to the Nearens and King & Jackson, their vendees, the other half. The judg-

ment also in all things confirmed, ratified and established the lease from Mrs. Mann to Baten and by him assigned to the Gulf Production Company as valid and binding upon all parties to the suit, they having ratified and confirmed same, and agreed to the proportions of the royalty to be paid to each, setting out same.

On July 8, 1926, James F. Weed and the Gulf Production Company filed suit, No. 26969, in the Sixtieth district court of Jefferson county, in trespass to try title against the Rio Bravo Oil Company and the T. & N. O. Railroad Company, and to enjoin the Rio Bravo Oil Company from developing for oil the railroad right of way adjacent to Weed's land (⁴⁸⁄₁₀₀ of an acre in the right of way) a part of southeast half of lot 6 before mentioned. An agreement was entered into by the parties and filed in the cause by which the defendant parties should continue the operations and the interests of the parties adjudged and concluded according to the judgment of the court of last resort to which the case might be taken.

On July 22, 1926, the instant suit No. 27039 was filed in the Sixtieth district court of Jefferson county by Mrs. Jeanette Mann, joined by her husband, Charles H. Mann (hereinafter referred to as the Manns), W. S. Nearen, M. F. Nearen, L. P. Nearen, Al Nearen, W. L. Nearen, Ollie Nearen, Anna Thomason, joined by her husband, J. H. Thomason, Addie Stone, joined by her husband, Early Stone (hereinafter referred to as the Nearens), Thomas J. Baten, S. M. King, John C. Jackson, J. E. Broussard, and the Gulf Production Company, against the Rio Bravo Oil Company, Texas & New Orleans Railroad Company, Jeff Chaison Townsite Company, Marrs McLean, J. M. Hebert, and Chas. J. Chaison, Clara Chaison and Jennie Chaison (known as the Chaison heirs); to recover ⁴⁄₁₀ of an acre of land situated in the railroad right of way of the Texas & New Orleans Railroad Company, claimed by the plaintiffs as a part of lot 6 according to the partition between J. M. Hebert and the Chaisons of a certain 52 acres of land, a part of the John Douthitt survey in Jefferson county, Tex. (above mentioned), and to enjoin the Rio Bravo Oil Company from producing oil therefrom. They alleged that on July 21, 1926, they were the owners of and lawfully in possession of the ⁴⁄₁₀ of an acre of land, subject only to an easement right of way for railroad purposes claimed and used by the defendant railroad

company, and described the 5/10 of an acre by metes and bounds, locating same as between the center of the Texas & New Orleans Railroad main line track and the western line of its right of way, and a part of the northeastern end of lot 6 of said division of said 52 acres of said Douthitt survey. This location made the 5/10 of an acre adjoin on the east the one acre sold by J. M. Hebert to the Trenton Rock Oil Company. It thus filled the space between the said one acre and the middle of the railroad track. They further alleged that the plaintiffs, other than the Gulf Production Company and Thos. J. Baten, were the owners in fee simple of the premises in controversy, and that Baten and the Gulf Production Company were the lessee and sublessee, respectively, of said property, under a certain oil, gas, and mineral lease executed by the Manns to Baten, dated January 23, 1926, which was assigned by him to the Gulf Production Company, and the rights of said Gulf Production Company under said lease, confirmed by the judgment of the Fifty-Eighth district court of Jefferson county in cause No. 26612, on June 11, 1926, and the rights of the other plaintiffs in said land fixed by the terms of said judgment, by reason of which said Gulf Production Company was the owner of the oil and gas underlying the land in controversy.

On August 2, 1926, the parties to this suit entered into and filed in this cause, an operating agreement under which the Rio Bravo Oil Company was permitted to continue to develop the 5/10 of an acre, upon condition that if the final judgment in the case should be against the defendants they would account for the value of the oil produced, less operating expenses and overhead costs. On December 1, 1926, the parties entered into and filed in this cause a further agreement that this cause should abide the result of a similar suit then pending in the Sixtieth district court of Jefferson county, cause No. 26969, styled Weed v. Rio Bravo Oil Company, in which the issues of fact and of law were the same as in the instant case, and which involved that part of the southeast one-half of said lot 6 in the railroad right of way, being 43/100 of an acre; and that the final adjudication of the issues in the Weed-Rio Bravo Case should determine the issues in the instant case. In the Weed-Rio Bravo Case the trial court rendered judgment in favor of Weed and the Gulf Production

Company, September 20, 1926, holding that the southeast half of lot 6 extended to the center of the railroad right of way and included the 43/100 acre there involved, burdened with the railroad right of way easement. This judgment was appealed to the Court of Civil Appeals, and there affirmed, Rio Bravo Oil Co. v. Weed, 300 S.W. 171. It was then carried to the Supreme Court, and there affirmed, 121 Tex. 427, 50 S.W. (2d) 1080, 85 A.L.R. 391, and writ of certiorari was denied by the Supreme Court of the United States, 288 U.S. 603, 53 S.Ct. 387, 77 L.Ed. 978.

In accordance with the agreement that the controversy in the instant suit as to the ownership of the 5/10 of an acre should abide the decision of the like question as to the ownership of the 43/100 of an acre like situated in the Weed-Rio Bravo Case, when in said case it was determined that the southeast half of lot 6 extended to the center of the railroad main line track, as per force of this holding, the northwest half of lot 6 (including the 5/10 acre) likewise so extended, then the Rio Bravo Oil Company paid to the Gulf Production Company the value of the oil and gas produced from said 5/10 of an acre, amounting to $1,224,374, and the Gulf Production Company thereupon paid to the Manns and the Nearens and their vendees, the value of the royalties claimed by them in the oil and gas produced from said 5/10 of an acre of land, which was, in every instance, accepted and receipted for by them as full, final, and complete settlement of all amounts due them, by virtue of this suit, to wit, No. 27039, Mrs. Jeanette Mann et al. v. Rio Bravo Oil Company et al. The 1/24 overriding royalty claimed by Baten, amounting to $67,489.76, together with interest thereon, was not accepted by him, he claiming a further interest in the production from said 5/10 acre, was tendered into court.

On June 16, 1933, Thos. J. Baten, lessee of the Manns of the 5/10 acre, filed suit against the Manns et al. in the Fifty-Eighth district court of Jefferson county, No. 41180, styled Thos. J. Baten v. Jeanette Mann, et al., praying for an injunction restraining the parties from certain acts alleged by him as detrimental to his asserted claim to interests in the 5/10 acre involved. Temporary writ was granted. On February 27, 1933, the Rio Oil Company was incorporated under the laws of the state of Louisiana with Thos. J. Baten and his

son Gordon Baten its stockholders. On March 3, 1933, Thos. J. Baten assigned in writing to said Rio Oil Company, $\frac{5}{6}$ of the value of the minerals produced from the $\frac{4}{10}$ acre. He excepted from his conveyance a full $\frac{1}{8}$ royalty provided for in the Mann lease to him on January 23, 1926, and also reserved from said assignment a $\frac{1}{24}$ additional or overriding royalty. The Rio Oil Company, November 20, 1933, filed suit No. 42158, in the Fifty-Eighth district court, against the Gulf Production Company et al. to recover the value of $\frac{5}{6}$ of the oil and gas produced from the $\frac{4}{10}$ acre in controversy. On motion of the Manns the Baten suit, and the Rio Oil Company suit, above mentioned, were transferred from the Fifty-Eighth district court to the Sixtieth district court for the purpose of being consolidated with the instant cause No. 27039, therein pending, and were consolidated with said cause, and all parties given leave to replead. New pleadings were filed.

The case was tried to a jury, but at the conclusion of the evidence under instruction of the court the jury returned a verdict in favor of the Gulf Production Company, the Rio Bravo Oil Company, and the Texas & New Orleans Railroad Company, and denying in all things the claim of the Manns, the Nearens, and the Rio Oil Company; and in favor of Thos. J. Baten, as against the claim of the Manns and Nearens, for the value of $\frac{1}{24}$ royalty (the amount tendered into court), $67,489.76, with 6 per cent. interest thereon from June 16, 1933, and judgment was rendered accordingly. This money was on order of the court paid into court, and then paid to and accepted by Thos. J. Baten.

Motions for a new trial were filed by the Manns, the Nearens, and the Rio Oil Company, which were all overruled, and the case is before us for review on appeal of each of said parties.

As an apology for the above long-drawn-out statement of the nature and history of this litigation, we will say that the record is quite voluminous, the transcript consisting of 336 pages, while the statement of facts comprise four large volumes of more than 1,100 pages besides exhibits. As is seen, several different suits involving many parties plaintiffs, defendants, and interveners, were finally consolidated. We have done our best to dig through the vast records and to state as best we could the matters involved. While the pleadings and repleadings are much involved, and somewhat confusing, we think the issues not numerous nor novel.

There are many assignments and propositions, and counter assignments and counter propositions, urged by the various parties, but we shall discuss only the matters deemed by us necessary to a disposition of the appeal.

■ The lease from Mrs. Mann to Thomas J. Baten, dated January 23, 1926, described by metes and bounds the Trenton Rock acre which adjoined on the west the $\frac{4}{10}$ acre in the right of way. It made no mention of the $\frac{4}{10}$ acre. Under the decision of Rio Bravo Oil Company v. Weed (Tex.Civ.App.) 300 S.W. 171; Id., 121 Tex. 427, 50 S.W.(2d) 1080, 85 A.L.R. 391, the portion of lot 6 in the right of way ($\frac{4}{10}$ acre) adjoining the one acre attached to and became an appurtenant of the one acre, and so the property of Mrs. Mann. All parties agree this is true. Mrs. Mann contends that as her lease specifically described only the one acre as the land leased by her to Baten, the $\frac{4}{10}$ acre was not included in the lease, and she was entitled to the oil produced from the $\frac{4}{10}$ acre. But the Manns described the land leased by them to Baten as "All that certain tract of land situated in the County of Jefferson, State of Texas, described as follows: A certain tract of one acre of land in Lot No. Six (6) of the John Douthitt Survey in Jefferson County, Texas, and being the same acre of land conveyed to me on April 6, 1914, by W. D. Gordon by deed recorded in Vol. 142, page 559, of the Deed Records of Jefferson County, Texas, to which reference is here had for all purposes, being all of the lands, and it being Lessor's intention hereby to lease all of the lands, owned by Lessor in said Survey or in any of them." So, under the decisions she did include the $\frac{4}{10}$ acre in the lease to Baten, and her contention is without force. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.(2d) 442; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.(2d) 447; Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.(2d) 452.

■ At the time Mrs. Mann executed the oil lease to Baten she claimed the whole of the leased property. Later the Nearens filed suit (cause No. 26612 mentioned supra) in trespass to try title against the Manns et al. for the "one acre of land" known as the Trenton Rock Oil Company acre, describing it as it was described in

all of the deeds up to and including the deed from W. D. Gordon to Mrs. Nearen (later Mrs. Mann). An agreed judgment was entered in that suit awarding to the Manns one-half of the land, and to the Nearens and their vendees the other half. The judgment, by agreement of all parties, ratified, confirmed, and established as valid and binding upon all the parties the lease of the Gulf Production Company, same being the Mann lease to Baten, which he had assigned to said Gulf Production Company. Thus was the ownership of the Gulf Production Company of and to all of the oil and gas under the land involved established, subject to the payment of the royalties reserved against same, to the persons entitled to receive same.

The Mann lease to Baten was dated January 23, 1926. Baten, on April 14, 1926, in writing assigned the lease to the Gulf Production Company, reserving to himself a $\frac{1}{24}$ overriding royalty in the oil and gas produced therefrom. This is not questioned by any of the parties. But Baten contends that his assignment of the lease to the Gulf Production Company covered only the "one acre," and not the $\frac{4}{10}$ acre here in controversy. In other words, that the lease as assigned by him covered only the one acre as described in the various deeds of conveyance, and did not cover the $\frac{4}{10}$ acre in the right of way. This contention is asserted also by the Rio Oil Company. The Gulf Production Company, the Rio Bravo Oil Company, and the Texas & New Orleans Railroad Company, contend that the lease from the Manns to Baten, which was by Baten assigned to the Gulf Production Company, and subsequently ratified by the Nearens, covered and included the minerals under the $\frac{4}{10}$ acre, that is that Baten's assignment to it of the Mann lease conveyed to it all and every right and interest and covered all the land that the lease from the Manns conveyed to him. That in his assignment he made no express reservation of any portion of the leased premises, but, by his said assignment, conveyed to it the entire leasehold held by him by virtue of the Mann lease. It is not disputed but that under the authorities Mrs. Mann owned and could lease the $\frac{4}{10}$ acre in the right of way. We have held, under the decisions cited, that Mrs. Mann's lease to Baten covered the $\frac{4}{10}$ acre. Baten's assignment of the lease to the Gulf Production Company was on its regular printed form. In part it reads:

"Assignment of Entirety of Leases,
Carrying an Over-Riding Royalty
"State of Texas, }
County of Jefferson }

"Know All Men by These Presents:

"That I, Thos. J. Baten of Jefferson County, State of Texas, hereinafter styled 'grantor' (whether one or more), for and in consideration of the sum of Two Thousand Five Hundred & No/100—($2,500.00) Dollars to grantor in cash paid by Gulf Production Company, receipt of which is hereby acknowledged, has. Sold, Conveyed and Transferred, and does hereby Sell, Convey and Transfer, unto said Gulf Production Company, a corporation chartered under the laws of the State of Texas, hereinafter styled 'grantee', the following described mineral leases, and the leasehold and all the rights therein conveyed and secured, together with all other rights, titles, interests or privileges in and to the lands and minerals hereinunder, given, conveyed or created by virtue of said instruments mentioned.

"Said mineral leases herein conveyed, covering land in Jefferson County, State of Texas, being described as follows, to-wit:

"Being that certain Oil, gas and sulphur lease, dated January 23rd, 1926, executed by Jeanette M. Mann; joined pro forma by her husband, Chas. H. Mann, both of the City of Los Angeles, California, executed in favor of Thos. J. Baten, and covering the following tract of land, to-wit:"

" 'A certain tract of one acre of land in Lot No. Six (6) of the John Douthit Survey in Jefferson County, Texas, and being the same acre of land conveyed to Jeanette M. Mann (Nee Mrs. J. M. Nearen) on April 6th, 1914, by W. D. Gordon by deed recorded in Vol. 142, page 559 of the Deed Records of Jefferson County, Texas, to which reference is here had for all purposes.' * * * "

It will be observed that the assignment recited that Baten had sold, conveyed and transferred to the assignee "the following described mineral leases, and the leasehold and all the rights therein conveyed and secured, together with all other rights, titles, interests or privileges in and to the lands and minerals hereinunder, given, conveyed or created by virtue of said instruments mentioned." The instruments mentioned, in this instance, was the Mann lease to Baten. The property conveyed in the assignment was the "leasehold ($1\frac{4}{10}$ acres) and all

of the rights therein" leased by the Manns to Baten, and by the assignment conveyed to the Gulf Production Company in its entirety.

Furthermore, the above description of the leased property in the instrument of assignment, is: "Being that certain oil, gas and sulphur lease, dated January 23rd, 1926, executed by Jeanette Mann * * * in favor of Thos. J. Baten," and described the one-acre tract by metes and bounds as in prior deeds of record, referring to the records. It clearly appears, we think, that as Baten was assigning to the Gulf Production Company "that certain oil, gas and sulphur lease" executed by the Manns to Baten, it could only mean that the lease in its entirety was assigned, for there was no reservation made by Baten whatever, and so the assignment conveyed and covered all that the lease conveyed to him.

But it is insisted that Baten did not assign the entire leasehold conveyed to him by the Manns, but that he reserved for himself the $\frac{5}{10}$ acre in the right of way, and the minerals under same, for in that in an escrow agreement entered into by Baten and the Gulf Production Company April 14, 1926, looking to the assignment of the Mann lease to said company, said escrow agreement being on the company's regular printed form for such instrument, it was stated: "Thos. J. Baten having this day executed an assignment to the Gulf Production Company covering the entirety of a mineral lease from Jeanette M. Mann, et vir, Chas. H. Mann to Thos. J. Baten dated January 23rd, 1926, recorded at page — in vol — of the —— records of Jefferson County, Texas, and covering one (1) acres out of the John Douthitt Survey in Jefferson County, Texas, described as follows: A certain tract of one acre of land in Lot No. 6 of the John Douthitt Survey, described in deed dated April 6, 1914, executed by W. D. Gordon, of record in vol. 142, page 559, Deed records of Jefferson County, Texas." The contention is that the letter "s" being canceled (as shown above) after the word "acre" shows that the one acre was all that was covered in the assignment from Baten to the Gulf Production Company, and that it thus appears that the $\frac{5}{10}$ acre was reserved. The object of the escrow agreement was to give opportunity to furnish the Gulf Production Company an abstract of title to the land covered by the lease, and said company an opportunity to pass upon the title to said land. The escrow agreement and the assignment of the lease were dated same day. We think the contention is without force because, under all the facts shown by the lease and its assignment, it is certain that the assignment by Baten of the Mann lease carried with it the entire leasehold and all and every right that Baten had therein. The lease in its entirety was assigned by him without reservation, and so his rights thereafter consisted in the royalties by him reserved, which have been recognized and paid to him. Furthermore, the escrow agreement was but in anticipation of the assignment, and when the assignment was executed and delivered to the Gulf Production Company, it was the final embodiment of the contract of assignment, and it declares that the leasehold in its entirety is assigned. The striking of the letter "s" from the word "acres" in the escrow agreement was in any event, without a specific reservation of some certain portion of the leased premises, abortive to reserve or except from the leased property any part of same. Moreover, the escrow agreement itself recites that "Thos. J. Baten having this day executed an assignment to the Gulf Production Company covering the entirety of a mineral lease from Jeanette Mann, et vir., Chas. H. Mann to Thos. J. Baten"—plainly states that the assignment of the Mann lease by Baten covered the "entirety" of the premises in the Mann lease to Baten—no reservation in any of the known modes of excepting property from conveyances was stated or employed, and so nothing was reserved.

The Manns and Nearens executed division orders to the Gulf Production Company directing and authorizing it to make payments for oil produced from the $\frac{5}{10}$ acre in the railroad right of way, "Being that portion of the Jeanette Mann Lease out of the Douthitt Survey as covered by the right of way of the T. & N. O. Railway."

June 17, 1933, W. S. Nearen, for himself and as attorney in fact for the Nearens, executed a bond to the Gulf Production Company indemnifying it from any loss it might suffer in paying to the Nearens the royalties claimed by them from the oil produced from the $\frac{5}{10}$ acre, it reciting: "The payment to be made under this bond is for that part of the oil claimed by W. S. Nearen, as aforesaid, produced from that part of the Jeanette Mann Lease in the T. & N. O. Ry. right of way." Thereafter on June 19, 1933, all the other Nearens executed a power of attorney to W. S. Nearen ratifying

all of his previous acts, and directing the Gulf Production Company to pay to the said W. S. Nearen all moneys due them from the oil produced from the 4/10 acre of land in the right of way which had been recovered by a final judgment against the Rio Bravo Oil Company by the Gulf Production Company as lessee of the said Mann acre, and stating the sum to be paid as "$74,741.77" which the Gulf Production Company desires to pay to W. S. Nearen, individually, and as the agent and attorney" of "the above named persons." In consonance therewith the Gulf Production Company thereafter delivered to W. S. Nearen, individually and as agent and attorney in fact the said sum of $74,741.77, which was accepted and receipted for by the Nearens "In full, final and complete settlement of all amounts due" them by virtue of their said claim and suit therefor. This fully and finally settled all claims of the Nearens as to the matter in controversy, and foreclosed any further or other claims by them in the premises.

The Manns on June 19, 1933, executed a bond indemnifying the Gulf Production Company against any loss occasioned by the payment to them of their claimed royalty interest in the oil produced from that portion of the Jeanette Mann lease, the 4/10 acre in the right of way, and thereupon the Gulf Production Company on June 21, 1933, paid to Mrs. Mann $42,353.66, which she accepted and receipted for as "full, final and complete" settlement of all amounts due her in the premises. Thus any other or further claim by her was foreclosed.

The record discloses that the Gulf Production Company had paid to the various parties to whom the Manns and the Nearens had conveyed royalty interests, the amounts claimed by them in the 4/10 acre, in full, final, and complete settlement of all amounts due them in virtue of said suit No. 27039, Mann et al. v. Rio Bravo Oil Company, et al., the instant suit.

Thomas J. Baten to whom the Manns had leased the land in controversy having assigned said lease in its entirety to the Gulf Production Company reserving to himself only a 1/24 overriding royalty in the value of the oil and gas produced from the leased premises, was awarded judgment for his 1/24 overriding royalty in the sum of $67,489.76, with interest thereon from June 16, 1933, amounting to $73,425.16, which was paid into court, and

when tendered to him was accepted by and paid to him. This discharged in full all liability of the Gulf Production Company to him by virtue of his interest in said leased premises. His contention that his assignment of the lease to the Gulf Production Company did not carry with it the 4/10 acre in the right of way, but only the one acre specifically described therein, and that he reserved said 4/10 acre out of and from said assigned lease, wherefore he was the owner of the oil taken from said 4/10 acre, the value of which he was entitled to recover, but 5/6 of which he had assigned to the Rio Oil Company, has already been discussed by us, and said contention overruled. The Rio Oil Company to whom Baten had assigned 5/6 of his asserted claim to the value of the oil taken from said 4/10 acre, having no basis on which to recover other than that asserted by Baten, and we having held that Baten's claim to such interest was without merit, then the Rio Oil Company's claim is without merit, and must fail.

No error appearing, the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

The Manns, the Nearens, and the Rio Oil Company have each filed motion for rehearing. Appellant Rio Oil Company says that we have inadvertently erred in our original opinion, in stating that "the Rio Oil Company was incorporated under the laws of the State of Louisiana with Thos. J. Baten and his son Gordon Baten its stockholders." It is insisted that the record shows that Thos. J. Baten was never in any manner a stockholder of said corporation. An examination of the record shows that Mr. Baten, on the trial below testified: "The stock is now owned by myself and my son, Gordon D. Baten."

As we view it, the main contention urged by appellant Rio Oil Company for rehearing is that which it calls a "novation" in the contracts under consideration— that is that the "operating agreement," in force during the pendency and final determination of the "Weed Case," constituted a "novation" of the lease assignment from Baten to the Gulf Production Company of the Mann lease covering the land in controversy, by reason of which it, Rio Oil Company, was entitled to recover. Without entering into a discussion of this contention, it is sufficient to say that no such

novation was pleaded by appellant; the case was not tried below on any such theory, and was not briefed or argued in this court on original submission on such theory. Its brief contained no assignment of error presenting such question. The contention comes too late when presented for the first time on motion for rehearing. Jones v. Osbolt (Tex.Civ.App.) 46 S.W. (2d) 422 (writ refused); Bank of Garvin v. Freeman, 107 Tex. 523, 181 S.W. 187; 3 Tex.Jur., § 111, p. 168. However, on its merits, the assignment cannot be sustained. On the undisputed evidence, there was no novation.

We have carefully considered the motions for rehearing, and fully adhere to our holdings announced in our original opinion, as to all parties appellants.

The motions are overruled.