**FURRH v. FURRH et al.**

**No. 6635.**

Court of Civil Appeals of Texas. Texarkana.

Sept. 25, 1952.

Rehearing Denied Oct. 16, 1952.

928

Merritt H. Gibson, Herbert L. Boyland, Jr., Longview, for appellant.

Smith & Hall, Marshall, for appellees.

WILLIAMS, Justice.

Litigants are the seven children of J. M. Furrh, Sr., who died April 26, 1935, and Sarah E. Furrh, his wife, who died intestate in 1928. The children conveyed their inherited interest to their father after the mother's death and recognize the full title to the large estate here involved in this partition suit passed under the terms of his will dated June 9, 1926, and codicil dated October 13, 1932. The will with codicil was admitted to probate in Harrison County, Texas, August 8, 1935. J. D. Furrh, James B. Furrh and W. K. Furrh were named as independent executors and trustees with full and general powers to manage, control and continue the operations of their father's vast business and agricultural enterprises. They forthwith qualified and have so served at all times.

Paragraph two of the will, pertinent to the points presented, reads: "This trust is created for the benefit of my seven children, viz.: J. D. Furrh, J. B. Furrh, Ewing Furrh Tenney, J. M. Furrh, Jr., Janie Furrh Pitts, Hugh Furrh Lothrop, and W. K. Furrh, and this trust, as to the personal property of my estate, shall continue for the term of ten years after my death, and as to the real or mixed property of my estate, shall continue for the term of twenty years after the date of my death. Within thirty days after the first day of each January after my death, my said trustees shall furnish to each of my said children a statement showing the net income from my estate for the preceding year and with such statement shall pay to each of said children a one-seventh part of such net income. if any, and at the expiration of ten years from the date of my death, my trustees shall cause the personal property of the estate then remaining on hand, if any, to be equitably divided and partitioned between my said seven children, share and share alike. After the expiration of twenty years from the date of my death, my said trustees shall cause the real and mixed property of my estate to be equitably divided and partitioned between my said children, share and share alike. If at the date of my death any of my said children shall have received any advancement from my estate, or if any of them shall have a credit in their favor, such advancement or credit to be determined by the books of my business in the name of J. M. Furrh, such advancement, if any, shall be charged to the distributive share of such child, and such credit, if any, shall be first paid from the estate, upon the division and partition as herein provided for."

The termination of the trust as above directed was modified in the codicil so as to provide: "Therefore, I do hereby will and direct that any child may elect that his or her portion of said original will shall be relieved of and withdrawn from the trust created under the terms of said will and to receive his or her proportional interest in my estate, devised and bequeathed by said will, by giving notice in writing to the trustees of said estate named and appointed in said will that he or she elects to withdraw his or her distributive interest in said estate from the provisions of said trust, and that such proportional interest

be delivered such child; and I do hereby will and direct that within one year after being given such notice in the manner herein stipulated, said trustees shall turn over and deliver unto such child the full proportional one-seventh interest in said estate; and providing further that if, at the date of my death, any child electing to receive under this codicil his one-seventh interest, shall have received any advancements from my estate, or if such child shall have a credit in his or her favor, such advancement or cerdit to be determined by the books of my business, under the name of J. M. Furrh, and conveyances or other instruments, evidencing an advancement, executed by me and shown of record in Harrison or Panola County, such advancement, if any, shall be charged to the distributive share of such child, and such credit, if any, shall be first paid from the estate, upon said one-seventh interest being delivered to such child so electing to receive his interest."

Litigants except Junius M. Furrh desired to withdraw their respective one-seventh interests. The trustees desire to close the trust. The refusal of Junius to elect to withdraw his interest or agree to a partition and termination of the trust prompted this suit filed in 1950 against him by J. D. Furrh, James B. Furrh and W. K. Furrh, individually and as trustees, Mrs. Pitts, Mrs. Tenney and Mrs. Lothrop, joined by their respective husbands. Junius filed a cross-action. He will be referred to as appellant, the others as appellees. Pursuant to agreement of litigants, the court in November, 1950, appointed C. J. Demmer, a public accountant, as auditor to "state the account between the parties; * * * and that the statement of account shall be as of the close of Dec. 31, 1950." Some months later the auditor filed an exhaustive report. Appellant filed exceptions to various items in the report, appellees none.

In stating the account between the children, the auditor's report shows that the trustees had distributed all cattle profits during the 1935–1950 period which amounted to $28,778.79 to the six appellees and none to appellant. The balance sheet as of December 31, 1950 showed that the trustees carried an account, designated "cattle account" as an asset in the amount of $4,200 and that after closing the various accounts which involved the various enterprises operated by the trustees, the auditor made an adjusting entry by which the cattle account was removed from the assets of the estate. This $4,200 represented the value of the cattle on hand on December 31, 1950, as then carried in the cattle account. Litigants agreed that cattle on hand on Dec. 31, 1950, had a cash market value of $26,-400. Appellant contends under his first point that as a matter of law he is entitled to one-seventh of above profits and one-seventh of the present value of the cattle on hand by reason of the provision of that part of the second paragraph of the will, which reads: "At the expiration of ten years from the date of my death, my trustees shall cause the personal property of the estate then remaining on hand, if any, to be equitably divided and partitioned between my seven children, share and share alike."

The father owned 210 head of cattle at the time of his death. Appellant makes above claim to the one-seventh on the basis that this herd remained a part of the estate through the years involved. But the jury in response to special issue No. 2 found that the cattle and profits represented in the "cattle account" did not belong to the estate of J. M. Furrh (Sr.). Based upon this finding, which finds support in the evidence, point one is overruled. The evidence discloses that shortly after the father's death, at the insistence of appellant, the 210 head was divided in kind; that in this division appellant was given and exercised first choice in picking out 30 head or one-seventh of the herd as his share of the cattle; that appellant then removed the 30 head so selected by him to his own individual pasture; that appellees accepted the remainder as their share and since such division appellees have jointly maintained their herd and so operated the growing and sale of cattle. The profits and cattle on hand as reflected in the "cattle account" are the results of such operation. Through the years the trustees furnished

a detailed annual account of the affairs of the estate which showed the receipts and disbursements in the various accounts; which also showed each year profits from cattle and which disclosed that the profits in the cattle account were being distributed to appellees and none to appellant. Litigants each year reported their income received for tax purposes based at least in part by the data that each annual report reflected. The only complaint appellant ever made until this action arose consisted of a complaint that he thought that some part of the foreman's salary should be charged to the cattle account.

■ Counsel for appellees in the closing argument stated to the jury that "over a period of sixteen years Junius Furrh had never made any objection to not receiving one-seventh of the cattle profits." This was a legitimate argument, a persuasive comment on evidence that had been introduced to corroborate appellees' position that the cattle had been partitioned and divided as urged by them. Appellant's objection to this argument is overruled.

The will provides "that the trustees pay to themselves an appropriate fee for their services in the execution of this trust." During the period from 1935 to December 31, 1950, one trustee had drawn $1,724.96 as trustee fees, another $4,138.16 and the third none. The auditor's report so shows. Appellees filed no exception to this report. In amended pleadings filed on April 21, 1951, two days prior to trial, appellees set up a claim for reasonable and appropriate compensation for their respective services as trustees for the period less the respective amounts each had withdrawn. In response to special issues Nos. 3, 4, and 5, submitted over objections and exceptions of appellant, the jury found that an appropriate fee for the services of each trustee for the period from August, 1935, to December 31, 1950, would be $16,000, indeed a moderate sum for the millions of dollars in transactions profitably handled by them. Upon such findings the court decreed that each legatee be charged with one-seventh of the $48,000. The account was adjusted in the judgment entered so as to reflect above award and the respective sums that had been withdrawn as fees. Other adjustments which reflected the court's findings and another jury finding on other items not attacked were also made.

In support of his exceptions urged to the pleadings that set up a claim for additional trustee fees and the exception and objections urged to submission of special issues Nos. 3, 4 and 5, appellant urges the provisions of Rule 172, Texas Rules of Civil Procedure, which reads: "[An auditor's] report shall be admitted in evidence, but may be contradicted by evidence from either party where exceptions to such report * * * have been filed before the trial." Grounded on this rule, appellant asserts that as a matter of law said trustees have waived their right to any additional compensation for services as trustees and the auditor's report was conclusive as to the amount of such fees paid or to be paid. It is appellant's position that although the will gave the testamentary trustees the right to pay themselves an appropriate fee for their services, "the court was not authorized to allow them credit for fees which they had not paid themselves, and which were not shown in the report of the auditor."

■ Such portion of the order appointing an auditor pertinent here reads: "It is accordingly ordered that C. J. Demmer, a public accountant, be and he is hereby appointed auditor in this cause, with the authority and duty of stating the account between the parties arising from their inheritance from their mother, and also by virtue of the will and codicil executed by their father * * *, and from conveyances or other instruments evidencing an advancement executed by J. M. Furrh, and shown of record in Harrison or Panola County; * * * that said auditor shall have the power, when deemed necessary by him, to summon witnesses, administer oaths and to take testimony, for the purpose of determining *facts not revealed by the books of account * * *; that the statement of account shall be as of the close of the business December 31, 1950." In obedience to this order dated November 17, 1950, the auditor's report dated February 27, 1951, was filed in the district court

on March 5, 1951. No pleading that set up a claim for fees as trustees had been filed in court at the time the auditor was appointed nor up to the time he filed his report. No one raised an issue before him as to such fees. If such an issue had been raised before him, above quoted directive of his authority did not authorize him to assume the powers of a master in chancery as enumerated in Rule 171, T.R.C.P. In the words of the auditor, this order "didn't say to state the account as I thought it ought to be stated, it just said state the account, and I stated the account as shown by the books and records of the Furrh estate;—relied on the books."

■ It is the court's conclusion that the legal right of the trustees to prosecute to judgment their claim for the fees sued for in their amended pleadings was not defeated by their alleged failure to specifically except under the provisions of Rule 172, supra. The amount that they had received is not attacked. The court's order did not delegate authority to the auditor to determine the value of their services as trustees for the period involved or for any period. The report makes no such determination. Appellees' amended pleadings filed subsequent to the filing of the report and two days prior to the trial in which this claim was made would meet the requirements of Rule 172, supra, if in fact same was necessary. Hillman v. Hillman, 138 Tex. 111, 157 S.W.2d 143.

Under a deed dated July 30, 1930, forthwith recorded, the father conveyed to appellant the standing trees of every kind and size located upon various lands therein described, aggregating 1,569 acres with right of ingress and egress, with the further provision that such timber that had not been removed by appellant within 30 years should vest in the children of appellant. In the second paragraph of the deed and subject to above grant, the father conveyed to the litigants each an undivided one-seventh interest in and to the oil, gas and other minerals in above lands in fee simple, to share alike. In the third paragraph, the father conveyed to appellant, subject to above grants, a life estate in above lands with remainder on appellant's death to the children of appellant.

The concluding paragraph in the deed which immediately follows the field note description of the land, reads: "But it is expressly agreed and stipulated that the conveyance of the timber to my son J. M. Furrh, Jr., and the conveyance of a life estate therein to him, with the remainder at his death to his children shall in the distribution of my estate be charged against the said J. M. Furrh, Jr., as an advancement, such conveyance being made by me to him, and being accepted by him with the express understanding and agreement that he shall in the distribution of my estate, be charged with an advance by reason of this conveyance in the amount of $22,535 or in other words at a rate of $15 per acre for the interest and estate hereinabove conveyed to him, such charge to be made against him in such amount and only in such amount at and when the distribution of my estate is made among my children or devisees after my death, and no charge is to be made for such advancement or no deduction made from his interest in my estate by reason thereof until such time and this conveyance shall in no other respect affect my son J. M. Furrh, Jr's., interest in my estate, and each of my children are to be charged at such time, as an advancement to them with the fair and reasonable value of their interest in and to the mineral rights in and under the land, as herein conveyed to them."

Neither the accounts of the estate nor the auditor's report reflected any charge for an advancement of any mineral interest. Based on a jury finding that the value of the minerals today was $14 an acre, a total of $18,828 for the acreage mentioned in above deed, the court charged each with one-seventh of this total or $3,138 and adjusted the account between the litigants accordingly.

Appellant asserts the $22,535 advancement charge mentioned in the quoted paragraph also included the one-seventh mineral interest conveyed by the deed and that only appellees should each be charged with $3,138.

"It is a well settled rule of construction that inasmuch as the parties must have intended all the provisions and terms of a deed to have some meaning and be given some import, from the fact that the terms and provisions were actually inserted in the deed, a deed will be so interpreted as to make it operative and effective in all its provisions, if its terms are susceptible of such interpretation." 16 Am.Jur. p. 534, Sec. 171, citing Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391, and numerous other cases.

This rule invoked by appellant when applied to this record supports the implied findings of the trial court that the grantor divided the whole of realty described in the deed into two portions, namely the timber and the life estate with remainder over to appellant's children as one portion; and the minerals under the same lands to all seven children. The concluding section of above quoted paragraph states "and each of my children are to be charged at such time, as an advancement to them with the fair and reasonable value of their interest in and to the mineral rights * * *." The expression "each of my children," would include all seven. Appellant as a child would be included in the expression "each of my children." The above rule of construction would not logically authorize a court to strike from the deed this expression that "each of my children are to be charged with their interest in the minerals." It is further to be observed that the timber and life estate with remainder to appellant's children are specifically enumerated, with no mention made as to minerals in the preamble of the paragraph which is followed by the grantor's valuation of $22,535. The mineral interest is mentioned for the first time in the last clause wherein the grantor says "each child" is to be charged with respective interests. It is argued that if each child were to be charged with one-seventh of the value of the minerals at the time of final distribution, that such a provision would be an idle gesture by the grantor, namely, if such minerals be worth $14 or $1,400 an acre such would not change the results as between the children. We are concerned here with what the grantor expressed and not the legal results of such expression.

The decree deals with three groups of property, namely, lands, personalty and mixed personalty and realty. The lands of the estate exclusive of that embraced in the advancement and exclusive of any minerals in any land were valued at $270,384.50. Under an agreement of litigants no partition of minerals under any land was made. Commissioners theretofore appointed by the court partitioned the lands then a part of the estate into seven parts of equal value. No exception was lodged by any one to the report of the commissioners. The court confirmed this report. The personal property which was valued at $123,606.94 was divided seven ways. The decree directs that one-seventh of the value of the personalty and the lands embraced in the shares allotted to appellant be delivered over and held by the trustees in compliance with the terms of the codicil. An equitable lien was fixed on the lands allotted to appellant and that embraced in his advancement as security for the $23,535.—advancement.

The mixed realty and personalty consisted of a mercantile store with its contents of merchandise, equipment and furniture; a cotton gin; a warehouse; the lots or acreage on which each were situated or which were owned and served by the respective buildings. It also included trucks, tractors, farm tools, machinery and equipment; mules, horses and notes and the bills receivable. This was valued at $47,423.02. The court appointed the Honorable Ben Woodall as receiver to sell this group of property "at public sale at the J. M. Furrh store in Elysian Fields, Texas, to the highest bidder for cash at 10 o'clock, A. M., on November 1, 1951, and the trustees James M. Furrh, J. B. Furrh, and W. K. Furrh, are expressly given and granted the right to purchase said properties individually."

We are unable to agree with appellant's contention that sale of this group of mixed property is violative of the terms

934

of the will which created this trust. The codicil in clear and unequivocal language, reflecting the skill of the able lawyer, specifically modified the duration of the life of the trust by granting the right to any child to have such share or shares relieved of the trust. The Commissioners' report which partitioned the land in kind and in equal values was received and approved by the court without a single exception or objection. With the exception of the attack that was made on the cattle items the charge to appellant for the value of one-seventh of the minerals involved in the advancement and the trustees' fees, all hereinabove discussed, no attack was made on the court's valuation of the property embraced in this mixed group and its division into seven equal parts. We can conceive of no logical or equitable reason why the same plan of partition of the mixed group should not be followed. Such plan is not violative of the 3rd paragraph of the will which guards against a forced sale under an attachment by some creditor of a child. The present action is for partition and distribution as provided under the codicil.

■ Appellant asserts that the court was without (legal) power to authorize the trustees to buy the beneficial interests of appellant (a beneficiary) in this mixed group at receiver's sale as being violative of the first clause of art. 7425b-12 Vernon's Ann.R.C.S. of Texas, Texas Trust Act, which reads: "A trustee shall not buy nor sell, either directly or indirectly, any property owned by or belonging to the trust estate, from or to itself or an affiliate; * * *." In 54 Am.Jur. p. 363, applicable here, it is stated "that a trustee may purchase the trust property at a public auction, where all who wish to purchase have an opportunity of doing so, where the sale was authorized or ordered by the court having jurisdiction of the trust estate and of the trustees * * *," "as where he is also a beneficiary which interest will be prejudiced in case he does not purchase." Where, "he makes special application to the court for permission to bid, which, upon the hearing of all the parties interested, is granted by the court, then he can make a purchase which is

valid and binding upon all the parties interested, * * *." Scholle v. Scholle, 101 N.Y. 167, 4 N.E. 334, 336; see also Scott v. Mann, 33 Tex. 725, 726, 729; Whiteley v. Whiteley, 117 Md. 538, 84 A. 68, 71; Bogert on Trusts & Trustees, Sec. 486; Pomeroy Equity Jurisprudence, Sec. 958B. We decline to read these restrictions as urged by appellant, into above statutory provision, where, as here, it is silent as to sale of trust property by a receiver under orders of a court. A full hearing was had before this sale was ordered. A disinterested person was appointed receiver to conduct this public sale at a certain time and place, after public notice. All litigants and beneficiaries have an equal chance to bid and likewise an opportunity to prevent the property from being sacrificed. Such a sale is subject to attack on a hearing for the court's confirmation; in effect, a mere offer to purchase until ratified.

■ The mixed property involved in the order of sale is referred to both in the pleadings and decree in general terms. A fuller and more particular description is necessary so as to identify the land by field notes, Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, and the number and character of the various items that make up this group. Such description is necessary to apprise the receiver what properties he is authorized to sell, what the public might be bidding on and to identify the land by field note description to be incorporated in receiver's deed. In this respect and this only the cause is remanded with instruction that the decree be so amended upon pleadings to be filed so as to identify the properties embraced in this group.

■ In the absence of the timely filing by appellees of their amended motion for new trial, their points based on cross-assignments of error will not be considered by this court. Rules 324 and 330(k), T.R. C.P.

The other points presented by appellants have been considered and are respectfully overruled. For reasons above stated this cause in part is remanded with instruction as above indicated, and in all other respects is affirmed.